A93A0680. RICHARDSON v. HENNLY.
A93A0807. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF VALDOSTA, INC. v. RICHARDSON.
(434 SE2d 772)

SMITH, Judge.

Bonnie Richardson filed suit in three counts against her former employer, First Federal Savings & Loan Association of Valdosta, Inc., alleging violation of the Georgia Equal Employment for the Handi-

capped Code, OCGA § 34-6A-1 et seq., battery, and intentional inflic-
tion of emotional harm. She also named as a defendant her former co-
worker, J. R. Hennly, Jr., against whom she alleged claims of battery,
intentional infliction of emotional distress, and interference with con-
tractual relations. Both defendants moved for summary judgment,
and their motions were heard separately by different judges. Hennly's
motion was granted as to the claims of battery and intentional inflic-
tion of emotional distress and denied as to the claim of interference
with contractual relations. First Federal's motion was denied. In Case
No. A93A0680 Richardson appeals from the grant of partial summary
judgment to Hennly. Case No. A93A0807 is First Federal's appeal
from the denial of its motion, taken pursuant to our grant of its appli-
cation for interlocutory review. The two cases have been consolidated
in this opinion.

The record reveals that Richardson had been working as a recep-
tionist at First Federal for a number of years when Hennly, an ad-
ministrative officer, began working at her branch. Richardson's work
station was in the lobby of First Federal, and Hennly worked in an
office approximately 30 feet from her desk. Hennly had been a pipe
smoker for a number of years, and continued to smoke his pipe at
work. Richardson immediately began to have difficulty with Hennly's
pipe smoke, to which she apparently had an allergic reaction that
caused nausea, stomach pain, loss of appetite, loss of weight, head-
aches, and anxiety. She discussed this problem with her superiors,
and several air cleaners were purchased, which were placed in the in-
terior of Hennly's office and adjacent to his door. For a time Hennly
switched to cigarettes, which did not bother Richardson as much, but
he resumed smoking his pipe, stating that he wished to avoid becom-
ing addicted to cigarettes. Richardson was twice hospitalized because
of her adverse reactions. Shortly after Richardson returned to work
from her second hospitalization her employment was terminated, pri-
marily for excessive absenteeism.

In opposition to the motions for summary judgment Richardson
presented medical evidence attributing her adverse reactions to the
pipe smoke. This evidence was not rebutted. It is uncontroverted that
Hennly was aware of Richardson's adverse reactions to his pipe
smoke and that she was twice hospitalized. The evidence is in conflict
regarding whether Hennly ever smoked anywhere at work other than
in his office; whether he intentionally smoked around Richardson to
annoy her; and whether he made teasing or offensive remarks regard-
ing his smoking.

## Case No. A93A0680

In granting partial summary judgment to Hennly the trial court
did not state its reasons. Because a judgment right for any reason will

be affirmed, *Rowell v. Parker*, 192 Ga. App. 215, 216 (2) (384 SE2d 396) (1989), we must determine whether any basis exists for the grant of partial summary judgment to Hennly.

1. In his motion for summary judgment, Hennly asserted that Richardson's claims were covered under the Workers' Compensation Act. Since OCGA § 34-9-11 provides that the Act is the exclusive remedy for covered injuries, Hennly argued that Richardson was barred from bringing this tort action. On appeal, Richardson contends that to the extent that the trial court may have based the grant of partial summary judgment to Hennly on the bar imposed by OCGA § 34-9-11, it was error.

OCGA § 34-9-1 (4) provides in pertinent part that the term "injury" as used in the Act shall not include an "injury caused by the willful act of a third person directed against an employee for reasons personal to such employee." Georgia courts have construed this to mean that when an employee is injured on the job from causes stemming from the animosity of another, the injury will nevertheless be compensable under the Act if "the animosity arose from reasons related to the employee's performance of [her] work-related duties. [Cits.] Conversely, if the animosity giving arise to the [injury] stemmed from reasons not related to the injured employee's performance of his work, then his injuries will not be considered compensable under the Act. [Cits.]" *Lindsey v. Winn Dixie Stores*, 186 Ga. App. 867, 868 (1) (368 SE2d 813) (1988).

Hennly had been a pipe smoker long before he was transferred to the branch where Richardson worked. Even assuming that Richardson is able to show that Hennly intentionally smoked his pipe around her in order to harm her and that she was injured as a result of Hennly's animosity, no evidence in the record suggests that the reasons for Hennly's alleged animosity were in any way related to Richardson's job performance or that they were anything but "personal to" Richardson within the meaning of OCGA § 34-9-1 (4). Consequently, we conclude that this action is not barred by OCGA § 34-9-11. *Lindsey*, supra.

2. Hennly moved for summary judgment as to Richardson's claim of battery on the ground that pipe smoke is an immaterial substance incapable of battering another. Richardson maintains the trial court erred by granting partial summary judgment to Hennly on this claim.

Our courts have recognized an interest in the inviolability of one's person and, along with most other jurisdictions, have followed the common law rule that any unlawful touching is actionable as a battery. *Haile v. Pittman*, 194 Ga. App. 105, 106 (3) (389 SE2d 564) (1989). In Georgia, a civil battery claim may be brought pursuant to OCGA § 51-1-13 or § 51-1-14. See generally *Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990). Such a cause of action will

lie even in the absence of direct physical contact between the actor and the injured party: " 'The unlawful touching need not be direct, but may be indirect, as by the precipitation upon the body of a person of any material substance.' . . . [Cit.]"[1] *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 265 (387 SE2d 593) (1989). In *Hendricks* the principle is stated in the form of a quotation from *Christy Bros. Circus v. Turnage*, 38 Ga. App. 581 (2) (144 SE 680) (1928), a case involving the tort of negligent infliction of emotional distress. *Christy Bros.* was subsequently overruled by the Supreme Court in *Ob-Gyn Assoc. &c. v. Littleton*, 259 Ga. 663, 666 (2) (A) (386 SE2d 146) (1989).

The principle itself, however, has long been the common law rule as to battery. "Since the disappearance of the distinction between trespass and case, it is no longer important that the contact is not brought about by a direct application of force such as a blow, and (if other elements of the cause of action . . . are satisfied) it is enough that the defendant sets a force in motion which ultimately produces the result." Prosser & Keeton, The Law of Torts, § 9, p. 40 (5th ed. 1984). See also Restatement (Second) Torts, § 18, comment c. We agree with Richardson, therefore, that the overruling of *Christy Bros.*, supra, does not change the common law as to battery in this regard.

We note that Richardson has not alleged that *any* or *all* smoke with which she came into contact would constitute battery. Instead, she has alleged that Hennly, knowing it would cause her to suffer an injurious reaction, intentionally and deliberately directed his pipe smoke at her *in order* to injure her or with conscious disregard of the knowledge that it would do so. We decline to hold that this allegation must fail as a matter of law. We are not prepared to accept Hennly's argument that pipe smoke is a substance so immaterial that it is incapable of being used to batter indirectly. Pipe smoke is visible; it is detectable through the senses and may be ingested or inhaled. It is capable of "touching" or making contact with one's person in a number of ways. Since no other element of the tort has been conclusively negated, Hennly has not shown as a matter of law that he is entitled to judgment. Moreover, a jury question remains regarding whether Hennly actually directed his pipe smoke at Richardson. We conclude, therefore, that the trial court erred in granting summary judgment in favor of Hennly on the battery claim. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

3. We likewise conclude that the trial court erred in granting

---

[1] Although the issue has not been raised by the parties, we construe the word "precipitation" in this quotation as applying to any situation in which contact is made with another person by issuing or directing some substance at the other, rather than making direct bodily contact.

summary judgment to Hennly·on Richardson's claim for infliction of emotional harm.

When a claim for infliction of emotional harm arises from negligent conduct, recovery is allowed only where there has been some impact on the plaintiff that results in a physical injury. But if, as here, the claim alleges intentional conduct resulting in emotional harm, it is not required that the plaintiff show an impact. *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). Although the law is still developing as to the tort of emotional distress and its ultimate limits have not yet been determined, the cases thus far decided have found liability for intentional infliction of emotional harm when the defendant's conduct has been extreme and outrageous. *Moses v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 224 (369 SE2d 541) (1988). See *Kornegay v. Mundy*, 190 Ga. App. 433, 434 (379 SE2d 14) (1989). Assuming Richardson's allegations to be true, the issue presented is, therefore, whether the conduct alleged is sufficiently extreme or outrageous to support recovery.

This issue presents a question of law for the trial court. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). Factors which may contribute to outrageousness and egregiousness include the existence of a special relationship in which one person has control over another, see *Anderson v. Chatham*, 190 Ga. App. 559, 567 (8) (379 SE2d 793) (1989); the actor's awareness of the victim's particular susceptibility, see *Williams v. Voljavec*, 202 Ga. App. 580, 582 (415 SE2d 31) (1992); and the severity of the harm resulting from the conduct. *Anderson*, supra. Some claims will be found not to rise to the requisite level of outrageousness and egregiousness as a matter of law. *Gordon v. Frost*, 193 Ga. App. 517, 521 (388 SE2d 362) (1989). Others, in which it is shown that reasonable persons could differ as to whether the conduct was sufficiently outrageous and egregious, must be decided by a jury. Id.

We find this case to fall in the latter category. It arose in a workplace setting, in which the element of control is present. "[B]y its very nature, [the employee-employer relationship] provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships [that] cannot easily be avoided." *Coleman v. Housing Auth. &c.*, 191 Ga. App. 166, 169 (1) (381 SE2d 303) (1989). Moreover, it is undisputed that Hennly was aware of Richardson's particular sensitivity to his pipe smoke and that Richardson's reaction was severe, including hospitalization. Although it is still true that one "must necessarily be expected and required to be hardened to . . . occasional acts that are definitely inconsiderate and unkind" without legal intervention, *Kornegay*, supra at 435, we conclude that from the factors enumerated, as well as the allegedly repetitive and continuing

nature of the conduct, *Coleman,* supra at 169, a reasonable person could find the conduct outrageous and egregious. Accordingly, a jury must determine this threshold question, as well as the fact question of whether Hennly deliberately or recklessly and wantonly directed his conduct at Richardson.

4. Given our reversal of the grant of summary judgment to Hennly, we need not address the issues raised by Richardson in two enumerations of error regarding the trial court's treatment of her motion to withdraw admissions.

### Case No. A93A0807

Our holdings in Divisions 1-3, supra, dispose as well of First Federal's contentions in Case No. A93A0807, with two exceptions.

5. In addition to the contention raised below by Hennly as to the battery claim, First Federal maintains that Richardson cannot support her cause of action against it for knowingly acquiescing in a battery, because the record shows without dispute that Hennly smoked only in his enclosed office 30 feet away from Richardson. Regardless of whether Hennly "blew" smoke at Richardson on one or more occasions, the evidence is in sharp conflict as to whether he smoked his pipe and deliberately approached her or otherwise directed his smoke at her at times and places which he knew would result in harm to her. We do not find Richardson's testimony to be contradictory in any material regard, necessitating the application of the principle set forth in *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27, 30-31 (2) (343 SE2d 680) (1986).

6. First Federal also asserts error in the trial court's denial of its motion for summary judgment on Richardson's claim that it violated the Georgia Equal Employment for the Handicapped Code (GEEHC), OCGA § 34-6A-1 et seq.

(a) It first argues that as a matter of law, Richardson fails to meet the definition of "handicapped" under the statute because of her admission that her sensitivity to pipe smoke was unlikely to cause her to experience difficulty in securing employment with other employers.

OCGA § 34-6A-2 (3) defines the term " '[h]andicapped individual' " to mean "any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, and who has a record of such impairment." " 'Substantially limits' " is defined in OCGA § 34-6A-2 (8) as meaning "that the impairment so affects a person as to create a likelihood that such person will experience difficulty in securing, retaining, or advancing in employment because of a handicap." " 'Major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." OCGA

§ 34-6A-2 (5). Given that Richardson's impairment caused her to experience difficulty in working and retaining her employment at First Federal, and that she did *not* admit otherwise, we agree with the trial court's rejection of First Federal's contention that as a matter of law she failed to meet the definition of a "handicapped individual."

(b) We reject as well First Federal's remaining arguments asserting error in the trial court's denial of its motion for summary judgment as to this claim.

It argues that summary judgment in its favor was required because even assuming Richardson was handicapped, it could have accommodated her handicap only by modifying its premises, moving her work station out of the lobby and isolating her, which is not required under the Georgia statute. In the first place, we do not agree that such modification was the only accommodation possible. In the second place, Richardson has not sought accommodation or physical modification. She has asserted only that First Federal violated the Act by discriminating against her because of her impairment when it discharged her on the pretext of excessive absenteeism, although under her employer's own policies, she had accrued sick leave sufficient to cover her absence due to illness.

The record does not support First Federal's argument that Richardson's sensitivity to the pipe smoke of customers rendered her unsuitable under the Act for that particular job.

First Federal failed to demonstrate that as a matter of law it was entitled to judgment, and the trial court properly denied its motion for summary judgment on the claim for violation of the GEEHC.

*Judgment affirmed in Case No. A93A0807 and reversed in Case No. A93A0680. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 15, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

*Zimring & Ellin, Jonathan A. Zimring,* for Richardson.

*Young, Clyatt, Turner, Thagard & Hoffman, Robert M. Clyatt, Daniel C. Hoffman,* for Hennly.

*Tillman, McTier, Coleman, Talley & Newbern, C. George Newbern, Edward F. Preston,* for First Federal.