Daniel DeNARDO, Appellant,

v.

Pat CORNELOUP, and the Foreman's
Properties Partnership, Appellees.

No. S–11703.

Supreme Court of Alaska.

July 13, 2007.

Rehearing Denied Aug. 7, 2007.

Daniel DeNardo, pro se, Anchorage.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for the Foreman's Properties.

No appearance by Pat Corneloup.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Daniel DeNardo sued his landlord and his neighboring tenant alleging that cigarette smoke emanating from the neighbor's apartment was making DeNardo ill. The superior court ultimately rejected all of DeNardo's claims.

We affirm. There was no error in dismissing DeNardo's claims of negligence and breach of the covenant of habitability after he voluntarily moved for dismissal of those claims and failed to preserve them in the superior court. There was no error in rejecting his claim that the landlord breached the covenant of quiet enjoyment, because there was no evidence the landlord substantially disturbed his use of the land. There was no error in rejecting his battery claim, because there was no contention that either defendant deliberately caused smoke to contact him. There was no error in rejecting his trespass and nuisance claims, because the arguments DeNardo makes here for imposing a duty on the tenant to refrain from smoking are unpersuasive, because he has not established that the landlord should be liable in trespass for tenant conduct it cannot control, and because he has not established that cigarette smoking by a tenant is ultrahazardous activity. We also affirm the grant

of summary judgment on DeNardo's claim of retaliatory eviction, because we conclude that he has not established that his failure to pay his rent in full was excused. He was therefore "in default in rent" per AS 34.03.310(c)(1) and ineligible to claim retaliatory eviction.

Finally, we detect no hint of bias, prejudice, or unfairness in the superior court's rulings and therefore reject DeNardo's appellate contention that the judge should have been disqualified.

## II. FACTS AND PROCEEDINGS

In 1991 Daniel DeNardo began renting an Anchorage apartment from the Foreman's Properties, a partnership of five members of the Foreman family. We sometimes refer to it as the landlord. The rental term was month-to-month, and rent was $385 throughout the rental period.

In March 2002 Pat Corneloup moved into the apartment next to DeNardo's in the Foreman's Properties's building. During the spring of 2002 Corneloup smoked cigarettes in his apartment. The lease did not restrict smoking in the Foreman's Properties apartments. DeNardo asserted that he complained to Corneloup that smoke could be smelled in adjoining apartments. He also asserted that he complained to Helen Foreman in March 2002, although she denied this assertion under oath. One other resident also complained to Corneloup that she smelled smoke "every now and again." This other resident later testified that the situation "cleared up" after she complained to Corneloup, and that she never complained to the landlord.

On June 7, 2002 DeNardo filed suit against Corneloup for "battery, negligence and trespass" as a result of cigarette smoke "invad[ing]" his property. Corneloup was the only defendant. The complaint did not name the Foreman's Properties or any individual partners as defendants.

As of June 12 DeNardo owed his landlord $677.73 for May and June rent; on June 12 he tendered a rent payment of $185, leaving him $492.73 in arrears. Later that day the Foreman's Properties served DeNardo with an eviction notice. Relying on a superior court affidavit signed by Helen Foreman, the Foreman's Properties contended below and argues here that it had no knowledge until June 13 that DeNardo had filed suit against Corneloup. DeNardo asserts that the Foreman's Properties had notice of the lawsuit as early as June 8, and that the eviction notice was retaliatory.

On June 20 DeNardo amended his complaint to name the Foreman's Properties Partnership and its individual partners as additional defendants. He later testified in the eviction proceeding that at the same time he sued the landlord, he gave written notice that he was withholding rent because Corneloup's smoking made the apartment uninhabitable. The Foreman's Properties's brief of appellee asserts that the individual partners were never served with a summons or complaint. Although the record contains copies of supplemental summonses issued by the superior court for Penny, Helen, Oliver, Reed, and David Foreman, it contains no return of service for any of them. Because DeNardo's reply brief does not argue that the individual Foremans were served, we assume that they were not. As a result, the only defendants before the superior court were Corneloup and the Foreman's Properties.

On June 24 the landlord served DeNardo with a Forcible Entry and Detainer (FED) summons and complaint seeking his eviction. In opposing the attempt to evict him, DeNardo successfully argued that he should not be evicted while his eviction appeal was pending; both he and Corneloup therefore continued to reside in their apartments. DeNardo asserted that he suffered from "anxiety, nausea, headaches, dizziness, sleeplessness, and general ill feeling" in addition to "humiliation" and "distress" caused by exposure to secondhand smoke. DeNardo was never medically evaluated for these alleged ill effects, and he admitted that "no medical records exist associated with the claims in this case."

DeNardo proceeded pro se in his lawsuit against Corneloup and the landlord and claimed: (1) breach of the covenant of quiet enjoyment, (2) breach of the covenant of habitability, (3) negligence, (4) trespass, (5)

battery, (6) nuisance, and (7) retaliatory eviction. The superior court dismissed all claims against Corneloup and granted summary judgment to the landlord on all claims except breach of the covenant of habitability and negligence.

DeNardo moved for reconsideration, and also argued that dismissing some but not all of the causes of action was logically inconsistent; he therefore "move[d] the court for an entry of judgment for defendants on all counts as the logical result of the summary opinion." The Foreman's Properties joined DeNardo's motion for entry of a judgment dismissing those remaining claims. The superior court granted DeNardo's motion and issued a final judgment dismissing the case, thus effectively dismissing all remaining causes of action, including the claim for breach of the covenant of habitability and the claim of negligence.

During litigation DeNardo moved for "recusal for cause" of the assigned judge, Superior Court Judge Sharon L. Gleason. DeNardo had filed two lawsuits against Judge Gleason in which he accused her of, among other things, not being fair and objective. Judge Gleason declined to disqualify herself. Superior Court Judge Eric Smith was then assigned to consider whether Judge Gleason should be disqualified; his order denying DeNardo's disqualification motion found "no sign of either incompetence or bias. To the contrary, the file reveals a careful and impartial consideration of the relevant law and facts on the part of Judge Gleason."

DeNardo appeals pro se.[1]

## III. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law, drawing all reasonable factual inferences in favor of the party against whom judgment was entered.[2]

■ Decisions on motions for disqualification are reviewed for abuse of discretion.[3]

### B. DeNardo Waived His Claims of Breach of the Covenant of Habitability and Negligence.

■ Because DeNardo asked the superior court to dismiss his claims of breach of the covenant of habitability and negligence, he is precluded from asserting that it was error to dismiss those claims or that he should be allowed to pursue them on remand. DeNardo seems to argue that it would be a waste of judicial resources to require plaintiffs to continue to litigate suits they know they will lose. Some jurisdictions permit a party to consent to entry of an adverse judgment to facilitate an appeal. The California Supreme Court has held that "[i]f consent [to an adverse judgment] was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal."[4] But this view is held in a minority of American jurisdictions.[5] In Alaska we recognize a "*Cooksey* plea" by which a criminal defendant does not contest conviction conditioned upon the right to appeal on a reserved issue.[6]

We have never recognized a civil analogy to a *Cooksey* plea or held that entry of a consent judgment to facilitate an appeal would permit such an appeal. But even if we had, we would not apply those procedures here. DeNardo did not consent to judgment

1. Corneloup has not entered an appearance on appeal. Although the appellate caption used during briefing lists the individual Foreman's Properties partners as appellees, it appears that they were never served and never appeared in the superior court. The individual Foreman's Properties partners therefore are not properly appellees and are not listed in our caption.

2. *Hammond v. State, Dep't of Transp. & Pub. Facilities,* 107 P.3d 871, 874 (Alaska 2005).

3. *Hanson v. Hanson,* 36 P.3d 1181, 1183 (Alaska 2001).

4. *Bldg. Indus. Ass'n v. City of Camarillo,* 41 Cal.3d 810, 226 Cal.Rptr. 81, 718 P.2d 68, 71 (1986).

5. *See* 4 Am.Jur.2d, *Appellate Review* § 175 (1997).

6. *Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

while preserving an issue; he moved to dismiss without reservation. He apparently thought that his habitability and negligence claims against the landlord were doomed without his battery, trespass, and nuisance claims. But those claims were distinct from his claims that the landlord failed to provide a habitable residence or was negligent. DeNardo should have proceeded to trial on the habitability and negligence claims if he wanted to litigate or preserve them; upon entry of a final judgment after trial he could have appealed, or cross-appealed, any adverse final or interlocutory rulings. Because DeNardo instead asked the court to dismiss his habitability and negligence claims and did not attempt to preserve them, he may not appeal from the order granting his own motion.

### C. Breach of the Covenant of Quiet Enjoyment

 DeNardo argues that because cigarette smoke entered his apartment,[7] the landlord breached "the covenant of quiet enjoyment." In Alaska, the covenant of quiet enjoyment is breached "if the lessee's enjoyment of the leased land is disturbed in a substantial manner either by the lessor or by the owner of a title paramount."[8] Because DeNardo did not offer facts sufficient to prove that his landlord substantially disturbed his use of the land, it was not error to dismiss this cause of action.

### D. Battery

 DeNardo next argues that because smoke contacted him there was a battery and that it was therefore error to dismiss his battery claim. A person commits the tort of battery when the actor intends to cause harmful or offensive contact with another; one need not intend injury but must intend to cause contact.[9] Blowing tobacco smoke in someone's face has been held to be harmful or offensive contact in other states, and DeNardo cites *Leichtman v. WLW Jacor Communications, Inc.*, in which the defendant "intentionally blew cigar smoke in [the plaintiff's] face."[10]

DeNardo does not contend that anyone intentionally blew smoke into his apartment or intended that the smoke contact him. He argues that the entry of smoke into his apartment should be deemed "intentional because of the special relationship" between landlord and tenant. DeNardo appears to base this theory on a misreading of a case in which the battery of an employee (who "intentionally smoked his pipe around [defendant] in order to harm her") was held potentially imputable to the employer for "knowingly acquiescing in a battery."[11] But DeNardo has not alleged deliberate "contact." There was consequently no battery.

### E. Trespass and Nuisance

 DeNardo next advances related theories of negligent trespass and nuisance against Corneloup and the Foreman's Properties. Because a landlord cannot be liable for trespass based on actions of a tenant over whom the landlord has no control, DeNardo's trespass claim against the Foreman's Properties fails.[12]

---

7. For purposes of this discussion, we assume that DeNardo's factual allegations are true.

8. *Berrey v. Jeffcoat*, 785 P.2d 20, 23 (Alaska 1990) (involving commercial lease).

9. *Taylor v. Johnston*, 985 P.2d 460, 464 (Alaska 1999); RESTATEMENT (SECOND) OF TORTS § 13 (1965).

10. *Leichtman v. WLW Jacor Commc'ns, Inc.*, 92 Ohio App.3d 232, 634 N.E.2d 697, 699 (1994). Other cases of battery cited by DeNardo regarding smoke involved intentional contact. DeNardo cites passages from three federal cases to support his argument that mere exposure to smoke is a battery. *See Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris*

*Inc.*, 83 F.Supp.2d 70, 92 (D.D.C.1999), *rev'd in part on other grounds*, 249 F.3d 1068 (D.C.Cir. 2001); *Barnes v. Am. Tobacco Co.*, 984 F.Supp. 842, 869 (E.D.Pa.1997), *aff'd*, 161 F.3d 127 (3d Cir.1998); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539 (D.Md.1997). They are not on point or they actually contradict his position.

11. *Richardson v. Hennly*, 209 Ga.App. 868, 434 S.E.2d 772, 775, 777 (1993), *rev'd on other grounds*, 264 Ga. 355, 444 S.E.2d 317 (1994).

12. *Parks Hiway Enters. v. CEM Leasing, Inc.*, 995 P.2d 657, 664 (Alaska 2000) (noting that "ownership or control of the intruding instrumentality" is required to be liable for trespass).

Corneloup did not commit negligent trespass or create a nuisance unless he violated a duty of care.[13] The superior court ruled that "one tenant in an apartment does not owe a duty to another tenant to refrain from cigarette smoking." Whether there is a duty of care is a legal question which we review de novo.[14]

One state has enacted a statute declaring that smoke passing between residences is a nuisance,[15] but there is no corresponding Alaska statute or Anchorage ordinance and there is no recognized common law obligation in Alaska to ensure that one's cigarette smoke does not drift into other residences. DeNardo does not cite, nor have we found, any American precedent holding that one tenant owes other tenants a duty to refrain from smoking absent either a provision in the rental agreement or a statute or municipal ordinance prohibiting smoking or declaring smoke a nuisance in a multi-party residence.[16]

DeNardo points out that AS 18.35.300, which bans smoking in some public places, states that "[s]moking in any form is a nuisance and a public health hazard." But we do not read this language as making smoking a per se private nuisance. Alaska Statute 18.35.305 prohibits smoking in schools, but exempts private residences located in the same building as a school. This implies that smoking in a private residence will not necessarily be a nuisance as to other residents. It also implies that the legislature did not intend to prohibit smoking in private residences. We conclude that an action for private nuisance based on the facts alleged by DeNardo must still be proved under ordinary legal principles governing nuisance.

■ We have adopted a multi-factor test—the so-called *D.S.W.* factors—to determine whether there is an actionable duty of care if no duty arises from recognized common law principles or from such sources as statutes.[17] But DeNardo has not briefed the *D.S.W.* factors as such and has only touched on them. Absent briefing on the issue we are unwilling to consider here whether these factors might give rise to a novel duty of care requiring tenants to avoid exposing co-tenants to ordinary levels of cigarette smoke resulting from personal use of cigarettes. No other court has ever found such a duty of care so far as we know, and we decline to create one in this case based on the briefing before us.

■ DeNardo alternatively contends that there was a trespass because cigarette smoking is an ultrahazardous activity. Trespass resulting from an ultrahazardous activity results in strict liability.[18] DeNardo's original complaint did not plead ultrahazardous activity, but he discussed it at the summary judgment oral argument, so we choose to treat the issue as preserved for appeal.

We have held that an activity or thing can only be ultrahazardous if it is "not a matter

---

**13.** Negligence requires duty, breach, causation, and harm. *Id.; see also Pruitt v. Douglas County*, 116 Wash.App. 547, 66 P.3d 1111, 1115 (2003) (noting that negligent trespass requires duty, breach, injury, and proximate cause). Nuisance also requires a breach of a duty. 58 Am.Jur.2d, *Nuisance* § 9 (2002).

**14.** *See Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1256 n. 1 (Alaska 1997) ("the existence and extent of a duty to act is a question of law").

**15.** Utah Code Ann. § 78–38–1(3) (2006) provides that "[a] nuisance under this section includes tobacco smoke that drifts into any residential unit a person rents, leases, or owns, from another residential or commercial unit."

**16.** The most comprehensive article on this issue (David P. Ezra, *"Get Your Ashes Out of My Living Room!": Controlling Tobacco Smoke in Multi-*

*Unit Residential Housing*, 54 Rutgers L.Rev. 135 (2001)) discusses theories of how cigarette smoke could qualify as a nuisance but cites no cases so holding. The cases cited discussing smoke nuisances involved wood-burning stoves or garbage incineration. *Id.* at 156–59. DeNardo cites *Dworkin v. Paley*, 93 Ohio App.3d 383, 638 N.E.2d 636 (1994), but that case involved a suit by a tenant to nullify his lease based on a claim of uninhabitability. The suit was not against a co-tenant and the plaintiff did not claim damages.

**17.** *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981).

**18.** *Parks*, 995 P.2d at 665. Whether an activity is ultrahazardous is a legal question; whether there was damage is a factual question. *Id.*

of common usage"[19] and "necessarily involves a risk of serious harm ... which cannot be eliminated by the exercise of utmost care."[20] Smoking of the sort alleged here does not satisfy that standard. Smoking is a "matter of common usage." Exposure to the limited amount of secondhand smoke emanating from a private apartment does not "necessarily" involve a risk of serious harm. Even without taking any extraordinary precautions, smokers can limit their smoking to places where non-smokers will be exposed to little or no smoke. Alaska Statute 18.35.305(1), which prohibits smoking in some public places, by its own terms "does not apply to a designated smoking area that is properly ventilated." Because the danger from secondhand smoke can be eliminated by the exercise of a modicum of care, the proper legal standard applicable in such cases is negligence, not the strict liability that attaches to ultrahazardous conduct.[21]

The Foreman's Properties does not deny that secondhand smoke can be a health hazard, but denies that either smoking cigarettes or renting an apartment infiltrated by secondhand smoke is ultrahazardous activity. We observe that the hazard posed by secondhand cigarette smoke differs from the hazard posed by typical ultrahazardous activities, such as blasting or fumigation with cyanide gas.[22] Even a brief exposure to blasting or cyanide gas may cause serious injury or instant death. No other court has found that exposing another to second-hand smoke is an ultrahazardous activity. We do not need to consider here what long-term harm might result from frequent and extended exposure to secondhand smoke. In any event, the sorts of harms alleged in this case (such as nausea and ill feeling) are not akin to serious injury or death.

In short, DeNardo's arguments in this case do not convince us that smoking cigarettes in an apartment is ultrahazardous activity in Alaska even though it generates secondhand smoke. His arguments in this case likewise do not convince us that renting an apartment into which secondhand smoke migrates is ultrahazardous activity.

We therefore hold that it was not error to dismiss the trespass and nuisance claims on summary judgment.

## F. Retaliatory Eviction Claim

DeNardo asserted a retaliatory eviction claim against his landlord on the theory it evicted him for engaging in conduct—complaining about Corneloup's smoking and suing Corneloup and the landlord—protected by the Uniform Residential Landlord and Tenant Act (URLTA).[23] He argues that he should be allowed to proceed with that claim on remand.[24]

The landlord urges us to affirm the summary judgment rejecting DeNardo's retaliatory eviction claim, and contends that it lawfully evicted DeNardo because he failed to pay rent.

Retaliatory eviction is prohibited by AS 34.03.310. That statute is part of the URL-

---

**19.** *State Farm Fire & Cas. Co. v. Municipality of Anchorage*, 788 P.2d 726, 729 (Alaska 1990) (quoting RESTATEMENT OF TORTS § 520 (1939)) (holding operation of water lines not ultrahazardous because "such systems are common indeed").

**20.** *Parks*, 995 P.2d at 665 (holding that gasoline storage is not ultrahazardous).

**21.** "The baseline common law regime of tort liability is negligence. When it is a workable regime, because the hazards of an activity can be avoided by being careful (which is to say, non-negligent), there is no need to switch to strict liability." *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir.1990).

**22.** *See Yukon Equip., Inc. v. Fireman's Fund Ins. Co.*, 585 P.2d 1206, 1211 (Alaska 1978) (rejecting Restatement approach to ultrahazardous activity and holding instead that storage or use of explosives leads to "absolute liability"); *Luthringer v. Moore*, 31 Cal.2d 489, 190 P.2d 1, 8 (1948) (holding fumigation with cyanide gas to be ultrahazardous); *Williams v. Amoco Prod. Co.*, 241 Kan. 102, 734 P.2d 1113, 1123 (1987) (holding that although natural gas is both poisonous and highly flammable, operating natural gas well is not ultrahazardous).

**23.** AS 34.03.

**24.** He also asserts that the superior court "did not rule on or mention the retaliation claim." This assertion is incorrect: the superior court granted summary judgment to the Foreman's Properties on DeNardo's retaliatory eviction claim.

TA,[25] which is to be "liberally construed and applied to promote its underlying purposes and policies."[26] Per AS 34.03.310(a), a residential landlord may not retaliate against a tenant for engaging in conduct protected by the URLTA. Subsection .310(a) describes retaliation as "increasing rent or decreasing services or ... bringing or threatening to bring an action for possession." Tenant conduct specifically protected by subsection .310(a) from retaliation includes complaining to landlords about AS 34.03.100 violations, seeking enforcement of URLTA rights and remedies, organizing or joining a tenant's union or similar organization, and complaining to a governmental agency that enforces housing, wage, price, or rent controls.[27]

Subsection .310(c)(1)-(7) sets out seven specific circumstances in which landlords, "notwithstanding" subsections .310(a) and (b), may bring actions for possession.[28] Relevant to this case, subsection .310(c)(1) permits an action for possession if the tenant is "in default in rent."[29] Thus, if the tenant is in default in rent, subsection .310(c)(1) permits a landlord to seek possession even if the tenant has engaged in conduct otherwise protected by subsection .310(a).

The superior court granted the landlord summary judgment on DeNardo's retaliatory eviction claim because it concluded that retaliatory eviction is only a defense and "does not confer a right or remedy to the tenant." This conclusion is not entirely correct. Certainly tenants who are victims of retaliation have, by statute, a defense in an action for possession.[30] But subsection .310(b) also gives them the remedies provided in AS 34.03.210: tenants subjected to retaliation may terminate the lease, sue for possession, and recover up to one and one-half times any actual damages.[31]

Even though it was incorrect to conclude that retaliatory eviction may not be the basis for an affirmative remedy, we may still affirm the superior court's summary judgment grant if an alternative ground to do so exists.[32] The landlord argues that it was entitled to evict DeNardo because, it claims, DeNardo was indisputably "in default in rent." If DeNardo was in default in rent, the landlord could seek possession regardless of whether DeNardo engaged in protected conduct.

DeNardo's appellate briefs seem to imply, but do not expressly contend, that there is a genuine factual dispute that precludes summary judgment for the landlord on his retaliation claim. DeNardo is pro se, so we judge his performance "by a less demanding standard."[33] By arguing that the Foreman's Properties retaliated against him for engaging in protected conduct and by requesting a remand for a jury trial, DeNardo has made it sufficiently clear that he believes there is a genuine factual dispute about whether he was in default in rent.

---

**25.** AS 34.03.380.

**26.** AS 34.03.010.

**27.** AS 34.03.310(a) provides:

Except as provided in (c) and (d) of this section, a landlord may not retaliate by increasing rent or by decreasing services or by bringing or threatening to bring an action for possession after the tenant has
(1) complained to the landlord of a violation of AS 34.03.100;
(2) sought to enforce rights and remedies granted the tenant under this chapter;
(3) organized or become a member of a tenant's union or similar organization; or
(4) complained to a governmental agency responsible for enforcement of governmental housing, wage, price, or rent controls.

**28.** AS 34.03.310(c)(1)-(7).

**29.** AS 34.03.310 states in part:

(c) Notwithstanding (a) and (b) of this section, after serving a notice to quit to the tenant under AS 09.45.100–09.45.105, a landlord may bring an action for possession if
(1) the tenant is in default in rent;
 . . . .

**30.** AS 34.03.310(b).

**31.** AS 34.03.310(b); AS 34.03.210.

**32.** *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002) ("We are not bound by the trial court's articulated reasoning and can affirm a grant of summary judgment on alternative grounds, considering any matter appearing in the record, even if not considered by the trial court.") (citation omitted).

**33.** *Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004) (citation omitted).

The phrase "in default in rent" is not defined by statute or case law in Alaska. We assume here that it means that the tenant is not current on rent, i.e., has not paid the full amount due on the due date, and has no legally cognizable excuse for not being current. On June 12, 2002, when DeNardo was given notice to quit, he owed $492.73 in rent. On June 24, when he was served with the FED summons and complaint, he still owed at least that amount. Thus, unless there is a genuine factual dispute about whether DeNardo was excused from having to pay the full amount of his rent, he was in default in rent.

DeNardo advances two theories why he was not in default in rent, i.e., why he was excused from having to pay the full amount of rent due. First he asserts that he was entitled to withhold rent because secondhand smoke rendered the apartment not habitable. Second, he asserts in his reply brief that he had an oral agreement with Helen Foreman that allowed him to delay paying his rent.

The viability of his first theory turns on statutory interpretation, and requires us to determine whether DeNardo had a right to withhold rent under the circumstances alleged here.

## 1. Rent withholding

■ The URLTA gives tenants the self-help remedy of rent withholding in specific, limited circumstances. The most prominent example is found in AS 34.03.180. If a land-lord deliberately or negligently fails to provide an essential service, AS 34.03.180(a) authorizes the tenant to withhold rent and use the withheld rent to obtain those services or substitute housing.[34] But the tenant's rights under subsection .180(a) "do not arise ... until the tenant has given written notice to the landlord."[35] DeNardo does not rely on section .180, and he does not claim that he used withheld rent to obtain replacement services or substitute housing.

The URLTA also excuses tenants from paying rent or permits them to reduce rent payments for various reasons associated with a landlord's failure to deliver possession or with a termination at the tenant's option, or upon constructive total or partial eviction following fire or casualty. Thus, per AS 34.03.160(a), if the landlord fails to materially comply with the rental agreement or AS 34.03.100 in a way that materially affects health and safety, the tenant may choose to terminate the rental agreement, but only after giving written notice.[36] Per AS 34.03.170, if the landlord at commencement of the term fails to deliver possession to the tenant, rent abates until possession is delivered.[37] Per AS 34.03.200(b), the tenant may, after giving notice, terminate the lease if the premises are damaged or destroyed by fire or casualty. But these provisions do not expressly or impliedly allow a tenant in possession to withhold rent and several contemplate or require prior written notice.

---

**34.** AS 34.03.180(a) provides:

(a) If, contrary to the rental agreement or AS 34.03.100, the landlord deliberately or negligently fails to supply running water, hot water, heat, sanitary facilities, or other essential services, the tenant may give written notice to the landlord specifying the breach and may immediately

 (1) procure reasonable amounts of hot water, running water, heat, sanitary facilities, and essential services during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent;

 (2) recover damages based on the diminution in the fair rental value of the dwelling unit; or

 (3) procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance and, in addition, may recover the amount by which the actual and reasonable cost exceeds rent.

**35.** AS 34.03.180(c).

**36.** AS 34.03.160(a) (stating that if landlord is in material noncompliance with rental agreement or AS 34.03.100 in way that materially affects health and safety, tenant may terminate rental agreement with twenty days advance written notice, unless landlord cures within ten days of receipt of notice).

**37.** AS 34.03.170(a) (stating that if landlord fails to deliver possession, tenant need not pay rent until possession is delivered, and may terminate lease with ten days written notice).

Alaska Statute 34.03.200(a)(2) is an exception. Per that subsection, if the premises are so damaged by "fire or casualty" that "enjoyment of the dwelling unit is substantially impaired" but continued occupancy of part of the unit is lawful, the tenant's rent is proportionally reduced by the diminution in the unit's rental value as of the date of the casualty. That subsection arguably allows a tenant in possession to reduce the rent without giving prior written notice, but there seems to be little danger in that circumstance that the landlord would not have ample prior notice of the event that proportionally excuses rent.

DeNardo generally asserts that he made an oral habitability complaint under AS 34.03.100 on March 8 and that the landlord retaliated against him for making that complaint. Alaska Statute 34.03.160(b) allows a tenant to recover damages and injunctive relief for a landlord's noncompliance with section .100.[38] But those remedies do not include the self-help remedy of rent withholding, even though they may result in the tenant defeating a possession claim or obtaining compensatory damages. The only URLTA provision that expressly addresses rent withholding, section .180, requires prior written notice.

There is no dispute that DeNardo did not, before he was given the notice to quit, give his landlord prior written notice that there was any defect or condition that affected the apartment's habitability. It is also undisputed that he gave his landlord no prior notice, oral or written, that he was withholding rent for any purpose.

DeNardo contends on appeal that he gave the landlord prior oral notice of secondhand smoke before he was given the quit notice and before he was served with the FED summons and complaint. We assume, for purposes of reviewing the summary judgment, that he did so. We must therefore decide whether prior oral notice would suffice to excuse a tenant from being "in default in rent" for purposes of section .310 if the tenant claims that defects or conditions render his apartment uninhabitable.

No provision in the URLTA states that prior oral notice is sufficient to allow the tenant to exercise the self-help remedy of rent withholding. As noted above, the only passage in the URLTA that allows rent reduction without written notice is for a tenant who remains in possession after fire or casualty damage.[39] The only URLTA section specifically permitting rent withholding is AS 34.03.180(a), and per AS 34.03.180(c), subsection .180(a) relief requires prior written notice. We think it is significant that the legislature chose to require the tenant to provide the landlord prior written notice of its failure to provide essential services before the tenant is entitled to relief under AS 34.03.180.

Based on the briefing in this case, we are unwilling to conclude that oral notice of infiltration of secondhand cigarette smoke from a neighbor's apartment is sufficient to excuse a tenant from being "in default in rent" for the purposes of subsection .310(c). As we have seen, the URLTA only grants the remedy of rent withholding for a tenant in possession in limited circumstances, and then only after prior written notice.[40] We are reluctant to read URLTA more expansively absent more comprehensive briefing on the respective rights of landlords and tenants.

Moreover, DeNardo only contends that he gave oral notice that the premises were uninhabitable, not that he gave notice that he was withholding rent as a result of the alleged uninhabitability. We decline here, on the basis of the briefing in this case, to hold that a landlord may be liable for damages on a retaliatory eviction claim if the tenant gives the landlord no notice that rent is being withheld as a result of the premises's condition.

---

**38.** AS 34.03.160(b) provides: "Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or AS 34.03.100, 34.03.210, or 34.03.280." Subsection .160(b) does not require prior written notice.

**39.** AS 34.03.200.

**40.** AS 34.03.180.

Potentially distinguishable from the section .310 rights and remedies are the rights and remedies provided tenants by AS 34.03.190(a). Under that provision, a tenant responding in a landlord's action for possession based on nonpayment of rent may counterclaim for amounts recoverable under the rental agreement or the URLTA, and a court may order the rent reduced to reflect the unit's diminution in value during the period of noncompliance.[41] Those are not self-help remedies. The URLTA appears to distinguish between a claim of retaliatory eviction under section .310 (which gives a tenant section .210 enhanced remedies beyond possession) and a counterclaim under section .190. The latter section permits the tenant to counterclaim for any amount under the rental agreement or the URLTA and to offset this counterclaim against rent owed. That section also permits the court to award possession to the tenant if the tenant pays back rent into the court such that he or she is no longer in arrears. We are reluctant based on the briefing in this case to expose a landlord to the enhanced remedies of section .210 on a retaliatory eviction claim simply for evicting a tenant who was undisputedly not current on rent, absent notice that the tenant has a statutory right to reduced rent (e.g., per subsection .200(a)(2)) or is entitled to reduced rent if the tenant makes repairs or obtains substitute housing (e.g., per subsection .180(a)).

In short, we decline in this case to interpret the term "in default in rent" to contain an exception for a tenant who, without giving prior written notice, withholds rent because he is bothered by migration of a neighbor's secondhand cigarette smoke.

**2. Oral agreement**

■ DeNardo asserts in his reply brief that he and Helen Foreman had an oral agreement regarding payment of back rent. He did not advance this contention in his opening appellate brief. In his superior court motion for reconsideration, he argued that he had an oral contract with Helen Foreman that gave him until September of 2002 to pay the back rent he owed, but he later waived that contention in the lower court. We assume that a tenant who, by agreement with his landlord, is excused from paying rent would not be "in default in rent." But because DeNardo waived the issue below and did not raise the issue on appeal until his reply brief, it is waived for the purposes of appeal.

We therefore affirm the summary judgment on his retaliatory eviction claim.

**G. Damages**

DeNardo challenges a superior court ruling that limited his damages to the period between March 2002 and June 2002. The superior court reasoned that because the tenancy was month-to-month, and the landlord was entitled to evict DeNardo in June 2002 for nonpayment of rent, DeNardo was not entitled to damages after the landlord began trying to evict him in June 2002.

We affirm because we have affirmed the dismissal of all of DeNardo's liability claims, including his retaliatory eviction claim, and because DeNardo's waiver of his habitability claim had the effect of waiving any claim for any additional damages resulting from the allegedly uninhabitable apartment.

**H. Judicial Disqualification**

■ DeNardo argues that Judge Gleason should have been disqualified. He advances various reasons. He cites a discovery ruling in which the court declined to require the Foreman's Properties to provide DeNardo with the home address of a witness. But DeNardo was provided with the information about the witness's workplace, allowing DeNardo to contact the witness. DeNardo also argues that Judge Gleason failed to cite precedent for her rulings. Trial judges are not obliged to cite authority in their rulings, especially procedural rulings, and our review of the record in this case does not reveal any deficiency on the part of Judge Gleason to cite precedent where appropriate.

Shortly before appellate oral argument DeNardo asked to supplement the record with a partial transcript of the October 8, 2002 hear-

---

**41.** AS 34.03.190(a)(1).

ing before Judge Gleason, on the theory it would reveal partiality. He asserted that the transcript would show that Judge Gleason had "sua sponte broached the subject how to terminate DeNardo's tenancy" and had given the Foreman's Properties advice on how to proceed with its suit. The transcript reflects that the attorney for the Foreman's Properties, without any suggestion from the court, asked the court to clarify whether the court's stay of the FED action would preclude eviction for reasons other than nonpayment. DeNardo was then given an opportunity to respond, and Judge Gleason declared that "this order was not intended to foreclose for all time either party from seeking whatever remedies are available ... under the Landlord/Tenant Code." The transcript does not reveal any improper action or bias on the part of Judge Gleason.

Statutory reasons for disqualification are set out in AS 22.20.020(a). The statute includes a general provision requiring disqualification if "for any reason, a fair and impartial decision cannot be given." Judges should recuse themselves if there is the appearance of bias, but "[b]y themselves, interpretations of the law are not sufficient to demonstrate the existence of bias."[42] We have recognized that "[d]isqualification 'was never intended to enable a discontented litigant to oust a judge because of adverse rulings made.'"[43]

The record reveals no basis for claiming an appearance of bias or conflict of interest. Judge Gleason was more than fair to DeNardo. Judge Gleason granted a number of DeNardo's motions that she could have reasonably denied at her discretion. Superior Court Judge Eric Smith, who reviewed the disqualification decision in 2003, found that a review of the actions of Judge Gleason "reveals a careful and impartial consideration of the relevant law and facts." We agree with the assessment.

DeNardo made a number of remarkably inappropriate personal attacks on Judge Gleason. For example, he accused her of having a "Satanically possessed mind" and a "self-destructive compulsive disorder." DeNardo also filed two civil suits against Judge Gleason accusing her of a variety of alleged abuses. Unfounded personal attacks of this sort against a jurist detract from a clear discussion of the merits of a case. Unsupported personal attacks on a jurist only distract the reviewing court from potentially meritorious issues. The record here totally fails to support any notion that Judge Gleason did not treat DeNardo fairly and impartially in this matter. His appellate arguments to the contrary are completely unsupported by the record.

## IV. CONCLUSION

Because DeNardo has waived his right to appeal the habitability and negligence claims, and because the superior court properly granted summary judgment to the defendants on all other causes of action, we AFFIRM the superior court's judgment.

---

42. *Jourdan v. Nationsbanc Mortgage Corp.,* 42 P.3d 1072, 1082 (Alaska 2002).

43. *Wasserman v. Bartholomew,* 38 P.3d 1162, 1171 (Alaska 2002) (quoting *Pride v. Harris,* 882 P.2d 381, 385 (Alaska 1994)).