Daniel DeNARDO, Appellant,

v.

Peter MAASSEN, Ingaldson Maassen & Fitzgerald, P.C., Foreman's Properties Partnership, Helen Foreman, Oliver Foreman, Penny Foreman, David Foreman, Reed Foreman, Thomas Melaney, Mark Rindner, and Mariuz Sawicki, Appellees.

No. S–12694.

Supreme Court of Alaska.

Jan. 30, 2009.

Rehearing Denied Feb. 20, 2009.

See also 163 P.3d 956.

308

Daniel DeNardo, pro se, Anchorage, Appellant.

Peter J. Maassen, Ingaldson Maassen & Fitzgerald, Anchorage, for Appellees Foreman Properties Partnership and Foremans.

Susan D. Cox, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee Rindner.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Daniel DeNardo first sued his former landlord, Foreman Properties, and several members of the Foreman family in 2002.[1] The litigation has since gone through several iterations, including a separate 2004 lawsuit, *DeNardo v. Sawicki*,[2] which immediately preceded the present case. In *Sawicki*, DeNardo sued Mariuz Sawicki (a former neighbor), Thomas Melaney (the Foremans' attorney), and the Foremans, alleging: (1) breach of the lease covenant of quiet enjoyment by Sawicki and the Foremans because Sawicki played music too loudly; and (2) harassment, violations of DeNardo's civil rights under 42 U.S.C. § 1983 and abuse of process by the Foremans and Melaney in the earlier *Corneloup* litigation. Superior Court Judge Mark Rindner granted dispositive motions in favor of all the *Sawicki* defendants.

In 2005 DeNardo filed the present case, *DeNardo v. Maassen*,[3] alleging that the *Sawicki* defendants engaged in abuse of process and notary fraud during the *Sawicki* litigation. DeNardo added an abuse of process claim against attorney Peter Maassen and his law firm (collectively Maassen), the Foremans' counsel in *Sawicki*, as well as § 1983 claims against Maassen and Judge Rindner. After denying a disqualification motion filed by DeNardo, Superior Court Judge Sen K. Tan granted summary judgment in the defendants' favor and awarded full attorney's fees to Judge Rindner. He also granted the defendants' request for a pre-litigation screening order prohibiting DeNardo from suing them again, excepting claims unrelated to his previous lawsuits against them. DeNardo appeals.[4]

We affirm the grant of summary judgment because there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. We affirm the denial of the disqualification motion, portions of the pre-litigation screening order, and the attorney's fees award to Judge Rindner as proper exercises of the superior court's discretion.

## II. FACTS AND PROCEEDINGS

DeNardo rented an apartment from the Foremans from approximately March 1991

1. *See DeNardo v. Corneloup*, 163 P.3d 956, 958 (Alaska 2007). We refer to Foreman Properties and the individual Foremans collectively as "the Foremans."

2. 3AN–04–5236 CI (Alaska Super., May 19, 2004).

3. 3AN–05–14472 CI (Alaska Super., December 30, 2005).

4. After filing his appeal, DeNardo stipulated to dismiss the attorneys from the case. Nothing in the record shows that Sawicki ever was served or appeared in the superior court litigation. Nor does anything in the record show that DeNardo's putative claim against Sawicki was resolved in any way; the final judgments entered to close the case do not mention Sawicki. Thus, the appellees here are the Foremans and Judge Rindner.

through June 1, 2004.[5] In March 2002 Pat Corneloup moved into the apartment next to DeNardo.[6] Corneloup smoked cigarettes in his apartment, but his lease did not prohibit smoking.[7] DeNardo sued Corneloup on June 7, 2002, for battery, negligence, and trespass resulting from Corneloup's cigarette smoke, which DeNardo claimed invaded his apartment.[8]

As of June 12, 2002, DeNardo owed $677.73 for two months' rent; he paid $185 on June 12, leaving him in arrears.[9] That same day the Foremans served DeNardo with an eviction notice for failure to pay rent.[10] DeNardo claimed that the Foremans knew of his lawsuit against Corneloup · as early as June 8 and that the eviction notice was retaliatory.[11] DeNardo amended his complaint to name the Foremans as defendants, suing them for trespass, battery, nuisance, retaliatory eviction, and breach of the covenant of habitability.[12]

The Foremans, represented by Melany, followed the eviction notice with a Forcible Entry and Detainer (FED) action against DeNardo.[13] DeNardo lost the FED action but was granted a stay of eviction pending appeal to the superior court on his claim that Corneloup's secondhand · smoke made his apartment uninhabitable and therefore excused his failure to pay rent.[14] Corneloup and DeNardo stayed in their apartments while DeNardo proceeded with his suit against Corneloup and the Foremans,[15] and the superior court ultimately dismissed all of DeNardo's claims.[16] DeNardo appealed, and we affirmed the superior court's judgment.[17]

In the 2004 lawsuit, *DeNardo v. Sawicki,* DeNardo sued the Foremans, Melaney, and Sawicki, the neighbor who allegedly played his music too loudly. DeNardo asserted a claim for breach of the covenant of quiet enjoyment (due to the loud music) and claims for harassment, abuse of process, and civil rights violations under 42 U.S.C. § 1983 by the Foremans and Melaney in the *Corneloup* litigation and FED case. Judge Rindner granted summary judgment in favor of the defendants and dismissed DeNardo's lawsuit in May 2006. DeNardo did not appeal.

DeNardo filed *DeNardo v. Maassen* in December 2005, ultimately including claims against the Foremans, Melaney, Maassen (counsel for the Foremans in *Sawicki* ), Sawicki, and Judge Rindner. DeNardo alleged that the defendants had "used false statements, perjury, negligent misrepresentations, and fraud upon the court" to defeat the abuse of process claims he had asserted in *Sawicki,* and that Judge Rindner had denied his constitutional rights while presiding over the *Sawicki* litigation.

In early June 2006 Maassen and the Foremans filed motions for summary judgment. DeNardo requested time for discovery to aid his opposition to summary judgment. Melaney then filed a motion to dismiss, adopting Maassen's and the Foremans' arguments. DeNardo opposed Melaney's motion in July 2006. In August Judge Tan denied DeNardo's request for time for discovery and gave him fifteen days to respond to the summary judgment motions.

In September Judge Rindner filed a motion for summary judgment and asked the court to impose a pre-litigation screening order that would prevent DeNardo from suing superior court judges. The Foremans, Maassen, and Melaney joined in the request for a pre-litigation screening order. In October DeNardo requested additional time for discovery to oppose Judge Rindner's sum-

---

5. *Corneloup,* 163 P.3d at 958.

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* at 958–59.

13. *Id.* at 958.

14. *Id.*

15. *Id.*

16. *Id.* at 959.

17. *Id.* at 957–58.

mary judgment motion and the defendants' combined request for a pre-litigation screening order, but did not identify any discovery that would be helpful to his opposition.

In December Judge Tan converted Melaney's dismissal motion into a summary judgment motion because it incorporated the Foremans' summary judgment filings, and gave DeNardo ten additional days to respond to the dispositive motions. After DeNardo filed another motion for time for discovery in January 2007, which Judge Tan denied because the issues on which DeNardo sought discovery had been litigated to conclusion in earlier cases, DeNardo moved to recuse Judge Tan for cause.

In February Judge Tan denied DeNardo's motion for recusal and granted the defendants' summary judgment motions and the motion for pre-litigation screening. Judge Rindner timely moved for attorney's fees under 42 U.S.C. § 1988, and Judge Tan granted the motion. Judge Tan denied DeNardo's motion for reconsideration of the fee award.

DeNardo appeals.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Denying DeNardo's Motion To Recuse.

█ DeNardo moved to recuse Judge Tan for cause, alleging that Judge Tan was biased because he was a named defendant in another suit brought by DeNardo. Judge Tan denied the recusal motion in the same order that granted summary judgment in favor of the defendants. Judge Tan declined to recuse himself because "[t]his court does not feel as though it must recuse itself merely

because it is being sued in another case by Mr. DeNardo."

Superior Court Judge Patrick J. McKay then reviewed Judge Tan's decision to deny the motion for recusal.[18] Judge McKay noted that DeNardo did not file a peremptory challenge or a timely challenge for cause, but instead waited approximately nine months before filing his motion in direct response to an adverse decision. Judge McKay observed that DeNardo sues judges frequently, often in response to adverse rulings, but concluded that adverse rulings are neither a basis for a lawsuit against a judge nor sufficient evidence of bias.[19] Judge McKay concluded Judge Tan properly refused to recuse himself and affirmed Judge Tan's decision.

DeNardo now argues that Judge Tan should have recused himself because DeNardo had an existing claim against him in another case. Recusal is governed by AS 22.20.020(a) and Alaska Code of Judicial Conduct Canons 2 and 3. Subsection .020(a) requires a judge's recusal if he or she "feels that, for any reason, a fair and impartial decision cannot be given."[20] Canon 2 provides that judges must "avoid impropriety and the appearance of impropriety, and act in a manner that promotes public confidence in the integrity and impartiality of the judiciary."[21] Canon 3 requires judges to perform their duties without bias or prejudice.[22]

█ We review decisions on disqualification motions for abuse of discretion.[23] "[We] will not overturn a judge's [recusal] decision unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts."[24] And we have noted that "a judge has as great an obligation not to disqualify himself [or herself], when there is no occasion to do so, as

---

**18.** *See* AS 22.20.020(c) ("If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court.").

**19.** Judge McKay disclosed that DeNardo had in fact sued Judge McKay in an unrelated matter, but determined that he could "be fair to Mr. DeNardo and maintain the required judicial detachment to make decisions in this case."

**20.** AS 22.20.020(a)(9).

**21.** Alaska Code of Judicial Conduct Canon 2(A).

**22.** Alaska Code of Judicial Conduct Canon 3(B)(5).

**23.** *Corneloup*, 163 P.3d at 959.

**24.** *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979).

he [or she] has to do so in the presence of valid reasons." [25]

■ The record does not contain, nor does DeNardo point to, any specific evidence of actual bias or an appearance of bias by Judge Tan. Our past holdings demonstrate that neither interpretations of the law [26] nor adverse rulings [27] alone are sufficient to require recusal. We now hold that disqualification is not required simply because a party is separately suing the judge in the judge's official capacity or based on the judge's performance of official duties, as long as the judge reasonably believes he or she can be fair and impartial.[28] Accordingly, we conclude that it was not an abuse of discretion for Judge Tan to deny DeNardo's motion for recusal.

**B. The Superior Court Did Not Err by Granting the Foremans' and Judge Rindner's Motions for Summary Judgment.**

■ We review a grant of summary judgment de novo, "drawing all reasonable factual inferences in favor of the non-prevailing party." [29] Once the moving party has made a prima facie showing that it is entitled to judgment on the established facts as a matter of law, the non-moving party "must demonstrate that a genuine issue of fact exists to be litigated by showing that it can produce admissible evidence reasonably tending to dispute the movant's evidence." [30] We will affirm a grant of summary judgment only when no genuine issues of material fact

exist and the moving party is entitled to judgment as a matter of law.[31]

**1. Summary judgment in favor of the Foremans was appropriate because no genuine issue of material fact exists as to DeNardo's abuse of process and § 1983 claims against them.**

**a. DeNardo's abuse of process claim against the Foremans is without merit.**

DeNardo's abuse of process claim in the *Sawicki* litigation consists of three parts. First, he alleges generally that the Foremans engaged in fraudulent and underhanded tactics in defending against his claims. Second, he complains that the Foremans refused to respond to his discovery requests. Finally, he asserts that the Foremans engaged in "notary fraud." Each argument is without merit because it either lacks a factual basis in the record or has been litigated in prior cases between the parties.

**(i) Generalized abuse of process allegations**

■ Abuse of process is a tort comprised of "two elements: (1) an ulterior purpose and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." [32] The first element, ulterior purpose, usually consists of "coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money [with] use of the process as a threat or a club." [33] The second element involves

25. *Id.* at 577.

26. *Corneloup,* 163 P.3d at 967.

27. *Wasserman v. Bartholomew,* 38 P.3d, 1162, 1171 (Alaska 2002).

28. *See, e.g., Corneloup,* 163 P.3d at 967 ("The record reveals no basis for claiming an appearance of bias or conflict of interest" despite DeNardo's two civil suits against the trial judge. *Cf. DeNardo v. Muni. of Anchorage,* 974 F.2d 1200, 1200–01 (9th Cir.1992) (affirming trial judge's decision not to recuse himself when judge was a member of state bar association, a named defendant in the case, and when plaintiff had sent letter to senate judiciary committee opposing judge's nomination, which court noted was "probative of DeNardo's dislike for [the judge], not the other way around.").

29. *Perkins v. Doyon Universal Servs.,* 151 P.3d 413, 415–16 (Alaska 2006).

30. *Harrold v. Artwohl,* 132 P.3d 276, 279 (Alaska 2006) (quoting *French v. Jadon, Inc.,* 911 P.2d 20, 23 (Alaska 1996)).

31. *Id.*

32. *DeNardo v. Cutler,* 167 P.3d 674, 678 (Alaska 2007) (quoting *Kollodge v. State,* 757 P.2d 1024, 1026 (Alaska 1988)) (internal quotation marks omitted).

33. *Id.* (quoting W. PAGE KEETON ET AL, PROSSER AND KEETON ON THE LAW OF TORTS § 121, at 897 (5th ed.1984) ) (internal quotation marks omitted).

an overt act, but "actions taken in the regular course of litigation," such as threatening suit or requesting discovery, are not "a proper basis for an abuse of process claim" even if done with an ulterior motive.[34]

DeNardo argues that the defendants committed abuse of process in the *Sawicki* litigation by: (1) filing motions based on misrepresentations of landlord-tenant laws and fraudulent affidavits with the ulterior purpose of convincing the court to dismiss his causes of action and deny his motions for discovery; (2) using motion practice to "burden [him] with a multiplicity of actions at law, appeals, costly motion practice, and attorney's fees accruing to [the] defendants' benefit"; and (3) filing the FED action to retaliate against him for complaining about the habitability of his apartment. To support these allegations on appeal, he cites only to his own motions, which have no factual basis. DeNardo seems to argue that the ulterior motive element is fulfilled by the Foremans' efforts to defeat his claims through litigation. DeNardo does not allege any specific improper willful acts in satisfaction of the second element of the abuse of process tort,[35] but it may be inferred he argues the improper willful act element was fulfilled when the Foremans used judicial process to evict him and file an FED action against him.

DeNardo has not demonstrated a genuine issue of material fact for either the ulterior purpose or willful act element of an abuse of process claim. DeNardo's argument is essentially the same as his underlying argument in *DeNardo v. Cutler*, in which DeNardo asserted an abuse of process claim against his former employer, its lawyer, its lawyer's law firm, and Judge Rindner.[36] DeNardo

argued that the defendants' ulterior motive was retribution for suing his employer and that the defendants sought to coerce him into abandoning his cause of action.[37] We concluded that his claim was insufficient to support an inference that the defendants "were attempting anything other than the successful dismissal of a lawsuit, which is not an ulterior motive" and that "[f]or this reason alone, the superior court's dismissal of the claim was proper." [38] We also concluded that DeNardo did not assert a "clear 'willful act' other than the filing of motions which were ruled upon favorably." [39]

Because (1) actions taken in the regular course of litigation are not a proper basis for an abuse of process claim,[40] (2) DeNardo did not plead his generalized abuse of process claims with any particularity,[41] and (3) DeNardo pointed to no facts supporting his claim, summary judgment against him was appropriate on his generalized abuse of process claim.

### (ii) Failure to reply to requests for admission

 Judge Rindner issued orders during the *Sawicki* litigation denying DeNardo's discovery requests on issues already litigated in *Corneloup*. DeNardo now argues that the Foremans engaged in abuse of process in the *Sawicki* litigation by refusing to answer his repeated requests for admissions.

Given Judge Rindner's discovery orders in *Sawicki*, DeNardo has not specified any requests for admissions the Foremans wrongfully failed to answer. DeNardo has further failed to demonstrate that he objected to this alleged discovery violation during the *Sawicki* litigation and to explain why his claim can be raised in this case when he did not

---

**34.** *Id.* (quoting *Meidinger v. Koniag Inc.*, 31 P.3d 77, 86 (Alaska 2001)).

**35.** DeNardo alleged in conclusory fashion that the Foremans used "perjury and deceit," "fraudulent affidavits," "negligent misrepresentations to misstate the law," and "fraudulent arguments unsubstantiated by case decisions." He also alleged that they "acted to curtail and deny [his] access to the evidence" and "acted to hide the facts and evidence by refusing to produce relevant, material, and probative evidence."

**36.** *Cutler*, 167 P.3d at 676, 678.

**37.** *Id.* at 678.

**38.** *Id.*

**39.** *Id.*

**40.** *Id.* (internal quotation marks omitted).

**41.** *See* Alaska R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

appeal the final judgment in *Sawicki*. Nor has he specifically alleged either an ulterior purpose or a willful act related to the Foremans' failure to respond to his discovery requests. Because DeNardo has not demonstrated a genuine issue of material fact, we affirm summary judgment against him on this issue.

### (iii) Notary fraud allegations

■ DeNardo's notary fraud claim consists of two parts. He first claims that the Foremans failed to "swear the oath required by law before signing the affidavit for documents submitted in this case and other cases between these same parties." He also claims that the Foremans improperly "approve[d] the use of Penny Foreman as a notary knowing that she is a party to the multiple actions between the parties and a named defendant in the notarized documents." He argues that the Foremans perpetrated "notary fraud" in an effort to deceive the court.

■ A notary's certification that the affiant knowingly signed the document in her presence is sufficient to make the document a "sworn statement" even without proof that the oral oath was administered.[42] Alaska Statute 44.50.062(5) permits a notary to notarize a document as long as "the person who is to sign the document (A) appears and signs the document before the notary public ...; (B) gives an oath or affirmation if required under law or if the notarial certificate states that the document was signed under oath or affirmation; and (C) is personally known to the notary public...." Alaska Statute 44.50.062(6)(A) provides that a notary may not "perform a notarial act if the notary public ... is a signer of or named in the document that is to be notarized."

Even assuming Penny Foreman notarized an affidavit in a case in which she was a named party, DeNardo's claim fails as a matter of law because he did not allege any specific facts in support of his fraud claim. Rather, he alleged in conclusory fashion that the Foremans perpetrated notary fraud "to deceive the court and DeNardo, to present perjury, [and to] procure an undo [*sic*] advantage by the use of fraud, deceit and entrapment." DeNardo points to no actual deception or false statement in the notarized documents, nor has he demonstrated that he suffered any specific harm as a result of Penny Foreman's alleged misconduct.

Because DeNardo has not demonstrated a genuine issue of material fact regarding the alleged notary fraud, the superior court properly granted summary judgment against him on this issue.

### b. DeNardo's § 1983 claim against the Foremans is without merit.

■ DeNardo also asserted a 42 U.S.C. § 1983[43] claim against the Foremans for seeking to deprive him of the property right in his tenancy. According to DeNardo, by bringing an FED action and relying on the assistance of a state actor (the judge), the Foremans acted under color of state law. DeNardo's claim hinges on the idea that an FED action is a construct of state law with "no significance outside the state court"; thus, he argues, private landlords who use the FED system are state actors for the purposes of § 1983. Even aside from the fact that the FED action was part of the long-since-completed *Corneloup* litigation,[44] DeNardo's claim has no merit.

■ In *DeNardo v. Cutler* we held that "acting under color of state law" requires a § 1983 defendant to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[45] A private party conspiring with a state actor may fall within § 1983's reach, but when association with a state actor forms the basis for necessary state action, conclusory allega-

---

**42.** *Gargan v. State*, 805 P.2d 998, 1004–05 (Alaska App.1991) (citing *Anchorage Sand & Gravel Co., Inc. v. Wooldridge*, 619 P.2d 1014, 1016 (Alaska 1980)).

**43.** 42 U.S.C. § 1983 provides a cause of action against persons acting "under color of any statute, ordinance, regulation, custom or usage, of any State" who violate federal rights.

**44.** *Corneloup*, 163 P.3d at 957–58.

**45.** *Cutler*, 167 P.3d at 678–79 (quoting *West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal quotation marks omitted) ).

tions unsupported by factual assertions are insufficient: "the pleadings must specifically present facts tending to show agreement and concerted action."[46]

DeNardo alleged in *Cutler* that his former employer and its counsel acted under color of state law because they could not have had his first suit dismissed if not for the intervention of the state judge following state court procedures.[47] We held that this was insufficient to support a finding of a conspiracy with a state actor and that "use of the court system by private parties for the purpose of litigation is not sufficient to bring them under 'color of state law.'"[48] We concluded that the superior court correctly dismissed DeNardo's § 1983 claims on those grounds.[49]

DeNardo here reprises his § 1983 claim from *Cutler*, arguing that FED actions are a construct of the state court system and that instituting an FED action is thus sufficient to show requisite conspiracy with state actors. This is the same argument we rejected in *Cutler*. DeNardo has not shown that the Foremans acted under color of state law, nor has he specifically presented any facts "tending to show agreement and concerted action" between the Foremans, Sawicki, and any individuals who would qualify as state actors.[50] We therefore affirm summary judgment on this issue in the Foremans' favor because no genuine issue of material fact exists and the Foremans are entitled to judgment as a matter of law.

 2. **Summary judgment in favor of Judge Rindner was appropriate because no genuine issue of material fact exists as to DeNardo's 42 U.S.C. § 1983 claims against him.**

 Again invoking § 1983, DeNardo sought unspecified injunctive and declaratory

relief against Judge Rindner for allegedly violating DeNardo's constitutional rights in *Sawicki*. Judge Tan granted summary judgment for Judge Rindner based on judicial immunity and collateral estoppel. DeNardo now argues that § 1983 authorizes declaratory and injunctive relief against state actors in their official capacity.

DeNardo's claim that he is entitled to declaratory and injunctive relief fails as a matter of law. The doctrine of judicial immunity bars DeNardo from suing Judge Rindner except for non-judicial acts or acts clearly outside Judge Rindner's subject matter jurisdiction.[51] DeNardo has failed to establish either element here. Accordingly, we affirm summary judgment in favor of Judge Rindner.

**C. The Superior Court Did Not Abuse Its Discretion by Ordering Pre–Litigation Screening.**

Judge Rindner asked the superior court to enter a pre-litigation screening order requiring DeNardo to submit future complaints against Alaska judges to the court for pre-filing screening. The Foremans and Maassen joined Judge Rindner's motion, asking the court to impose a pre-litigation screening order for their benefit as well. Rather than filing a substantive response, DeNardo moved for a continuance to conduct discovery he believed necessary to respond to the pre-litigation screening motion, even though the motion was based solely on his litigation history. Judge Tan granted a protective order against further discovery, holding no response to DeNardo's discovery requests was needed because they "address issues that

46. *Id.* at 679 (quoting *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983) (internal quotation marks omitted).

47. *Id.*

48. *Id.*

49. *Id.*

50. *See id.* at 679 (quoting *Sooner Prods. Corp. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983)) (internal quotation marks omitted).

51. *See DeNardo v. Michalski*, 811 P.2d 315, 316 (Alaska 1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). This court has specifically explained to DeNardo that judicial immunity applies to § 1983 claims against judges. *Cutler*, 167 P.3d at 679 ("[T]he absolute immunity traditionally accorded judges [is] preserved under § 1983." (quoting *Owen v. City of Independence*, 445 U.S. 622, 637, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980))) (internal quotation marks omitted).

were either actually litigated in previous cases on these same facts, or should have been."

Judge Tan then granted the screening motion in part and issued an order requiring DeNardo to seek court permission before filing any new complaints against the named defendants in this case. He ordered that the court would grant permission only if:

> a.) The complaint does not restate a cause of action that has already been asserted or could have been asserted in a prior case against the same parties;

> b.) The complaint is definitive, detailed, and legally sufficient to survive a motion to dismiss; and

> c.) Unless a stay of execution is in place, DeNardo has submitted proof that he has paid any court-ordered sanctions and awards of attorney's fees and costs that he owes defendants named in the new complaint under existing judgments and orders.

DeNardo asserts that the pre-litigation screening order is not factually supported and denies his constitutional rights to court access, redress of grievances, and trial by jury.

In *DeNardo v. Cutler* we considered a similar request by Judge Rindner for a pre-litigation screening order limiting DeNardo's ability to sue superior court judges.[52] We declined to consider Judge Rindner's request because it was raised for the first time on appeal, but nevertheless stated that screening orders may be permissible if they meet certain requirements: "A request for an injunction ... should be raised initially in the superior court in order to allow all parties the proper due process which must include a hearing, adequate justification in the record, and a narrowly tailored order."[53]

 We have not yet determined the appropriate standard for reviewing a pre-litigation screening order. The Foremans and Judge Rindner urge us to look to the Ninth Circuit Court of Appeals, which has held that pre-litigation screening orders are reviewed for abuse of discretion.[54] We agree and now hold that a pre-litigation screening order will be reviewed for abuse of discretion, but we will affirm an order only if it is narrowly tailored and based on adequate justification in the record.

 As a preliminary step, the question of whether the subject of a pre-litigation screening order received adequate procedural due process is a constitutional question that we review de novo.[55] "[P]rocedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case."[56] Notice of the matter at issue in the proceedings provides parties with a reasonable opportunity to be heard.[57] A hearing gives the parties "an opportunity to present the quantum of evidence" that the court needs to make "an informed and principled determination."[58] A party may waive the right to an evidentiary hearing on disputed material questions of fact by failing to request one before the court rules on the matter.[59]

---

52. *Cutler,* 167 P.3d at 680–81.

53. *Id.* at 681.

54. *E.g., Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1056 (9th Cir.2007) ("We review a pre-filing order entered against a vexatious litigant for abuse of discretion."); *DeLong v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir.1990) ("[W]e recognize that [there] is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.") (internal quotation marks omitted).

55. *Skinner v. Hagberg,* 183 P.3d 486, 489 (Alaska 2008) ("We review constitutional questions de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.").

56. *Price v. Eastham,* 75 P.3d 1051, 1056 (Alaska 2003) (quoting *Walker v. Walker,* 960 P.2d 620, 622 (Alaska 1998)) (internal quotation marks omitted).

57. *Id.* (quoting *Potter v. Potter,* 55 P.3d 726, 728 (Alaska 2002)).

58. *Id.* (quoting *Walker,* 960 P.2d at 622) (internal quotation marks omitted).

59. *Corbin v. Corbin,* 68 P.3d 1269, 1274 (Alaska 2003); *see also In re C.L.T.,* 597 P.2d 518, 522 (Alaska 1979) ("By consenting to certain procedures or by failing to object to others, a party

DeNardo received adequate procedural due process with respect to the pre-litigation screening order, including notice and the opportunity to be heard. The defendants requested the order in the superior court, thus giving DeNardo an opportunity to be heard on the matter. Although DeNardo unsuccessfully moved for discovery to respond to the motion, he failed to file a substantive response. He thus had—but did not utilize—the opportunity to respond, and he waived any right to a hearing on the motion by not requesting one. Finally, there are no genuine issues of fact about the number of times DeNardo has previously sued the Foremans or Judge Rindner or about the basis for his prior claims against them.

We also conclude that it was not an abuse of discretion to determine that the circumstances of this case justify a pre-litigation screening order. By their very nature, requests for pre-litigation screening orders require a court to consider the sum of a litigant's actions. DeNardo has named the Foremans as defendants in at least eleven suits, all of which have involved claims about the habitability of the apartment at issue in *Corneloup* and some of which have involved the same abuse of process claims. As the Foremans argue, "[a] case for pre-litigation screening with more 'adequate justification' than this one is hard to imagine."[60] Although the facts of this case alone warrant a pre-litigation order, the sum and character of DeNardo's long history with the court system also support the superior court's determination.[61]

The pre-litigation screening order, limited to suits against the named defendants in this case, is for the most part appropriately tailored to the particular circumstances of this case and therefore does not constitute an abuse of discretion. The first condition, found in section (a), prohibits DeNardo from filing a complaint that restates an existing cause of action or a cause of action that could have been litigated in a prior case against the same parties. This does not restrict DeNardo's access to the courts on new claims against these defendants or other parties. It limits only his ability to file complaints that would already be barred by res judicata or collateral estoppel. It is therefore reasonable to require DeNardo to present each of the prior complaints involving the defendants and to show, by reference to those prior cases, that any new complaint contains a distinct and viable new issue. The second condition, found in section (b), requires DeNardo's future complaints to be definitive, detailed, and legally sufficient to survive a motion to dismiss. This is also reasonable because all complaints must state a claim for which relief may be granted.[62] We therefore conclude that sections (a) and (b) of the pre-litigation screening order fall squarely within the court's discretion.

The third condition, found in section (c), requires DeNardo to submit proof that he has paid outstanding court-ordered sanctions and attorney's fees. In short, this requires DeNardo to settle up with the defendants before he may pursue a new case

may waive those rights which are arguably encompassed within due process.'').

**60.** DeNardo already has been subject to at least one injunction preventing him from filing additional federal suits against certain defendants. *See DeNardo v. Murphy*, 781 F.2d 1345, 1348 (9th Cir.1986). In *Murphy*, the Ninth Circuit Court of Appeals affirmed the district court's injunction, noting:

> [a]lthough litigiousness alone is no reason to enjoin future litigation, frivolous claims by a litigious plaintiff may be extremely costly to defendants and can waste valuable court time.
> In view of the number of times DeNardo has forced these defendants to defend themselves on the same claim, the age of the underlying claim, and the resolution of the issue in both

federal and state courts, the district court did not abuse its discretion by enjoining litigation over DeNardo's 1978 discharge. *Id.* (internal citations omitted).

**61.** DeNardo has filed at least sixty-two cases in state trial court since 1990. A supplement to the record on appeal indicates that DeNardo has named superior court judges as defendants on at least thirty occasions. This supplement also indicates that DeNardo has sued Judge Rindner at least three times other than in this case.

**62.** *See, e.g., Perry v. Gold & Laine, P.C.,* 371 F.Supp.2d 622, 631–32 (D.N.J.2005) (enjoining vexatious litigant's ability to file suit unless litigant shows her claim can survive, among other things, a motion for judgment on the pleadings).

against them. Judge Tan explained that this "merely ensures that DeNardo is able to pay debts previously ordered before he may [impose] further expenses on the defendants and the court." Requiring a litigant to satisfy his debts to named defendants before he may sue them again is not unprecedented.[63] But we conclude that sections (a) and (b) of the pre-litigation screening order provide the defendants adequate protection and that it is inappropriate to limit DeNardo's access to the court system based on his failure to satisfy debts resulting from previous unrelated lawsuits. We therefore affirm the pre-litigation screening order as to sections (a) and (b), but strike section (c).

### D. The Attorney's Fees Issue is Waived.

In April 2007 Judge Rindner moved for an award of full attorney's fees under 42 U.S.C. § 1988,[64] contending that DeNardo's claims against him were frivolous, vexatious, and in bad faith. DeNardo opposed the motion, but presented only one contention relevant to the attorney's fees issue: he claimed that the award of attorney's fees was not based on any findings of fact. Judge Tan granted Judge Rindner's motion.

DeNardo did not raise the attorney's fees issue in his Points on Appeal and his briefing on the issue is inadequate. Because an issue is waived when a party fails to raise it in the points on appeal and then inadequately briefs the argument,[65] DeNardo's challenge to the attorney's fee award is waived.

## IV. CONCLUSION

We AFFIRM Judge Tan's denial of DeNardo's motion for recusal. We AFFIRM

summary judgment in favor of the Foremans and Judge Rindner, as well as the award of attorney's fees in favor of Judge Rindner. Finally, we AFFIRM the pre-litigation screening order as to sections (a) and (b), but we strike section (c).

---

**63.** The Seventh Circuit Court of Appeals recently imposed a similar requirement on a vexatious litigant, noting: "[t]he due process clause entitles every litigant to a full and fair opportunity to be heard; it does not entitle anyone to be heard on the same question over and over. The law of preclusion (res judicata and collateral estoppel) rests on the proposition that once is enough." *In re City of Chicago*, 500 F.3d 582, 585 (7th Cir.2007).

**64.** § 1988(b) provides as follows:
(b) Attorney's fees. In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

**65.** *See Brady v. State*, 965 P.2d 1, 7 n. 5 (Alaska 1998) (concluding that "[d]espite our solicitude for pro se appellants," pro se appellant waived attorney's fee issue by failing to include it in points on appeal and to brief it adequately).