NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

DONALD TANGWALL, )
)  Supreme Court Nos. S-17984/18103
             Appellant, )  (Consolidated)
)
    v.                  )  Superior Court No. 4FA-19-01974 CI
)
GEORGE E. BUSCHER and    )  MEMORANDUM OPINION
LOIS L. BUSCHER,         )      AND JUDGMENT*
)
             Appellees.  )  No. 1887 – April 13, 2022
_____ )
BARBARA TANGWALL,        )
)
             Appellant, )
)
    v.                  )
)
GEORGE E. BUSCHER and    )
LOIS L. BUSCHER,         )
)
             Appellees.  )
_____ )

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Donald Tangwall, pro se, Salcha, Appellant. Barbara Tangwall, pro se, Salcha, Appellant. Christopher E. Zimmerman, Zimmerman & Wallace, Fairbanks, for Appellees.

---

\*  Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

In partial payment for real property, a buyer executed a promissory note secured by a deed of trust that authorized nonjudicial foreclosure on the property in the event of default on the note. After several months without payment on the note, the sellers authorized foreclosure proceedings. The sellers purchased the property at the foreclosure sale and brought a forcible entry and detainer (FED) action against the occupants of the property. The action was eventually transferred to superior court, where the occupants were subject to a pre-existing screening order. The superior court ultimately granted summary judgment in favor of the sellers and issued a judgment for possession of the property.

The occupants appeal, asserting a variety of arguments related to the foreclosure sale and subsequent FED proceedings, and contending that the superior court erred in applying the screening order to them in this case. Because the record supports no genuine issue of material fact about the foreclosure sale's compliance with relevant law or about the propriety of the FED proceedings, we affirm. Though the superior court applied the screening order too broadly, such error was harmless because the court did not screen out any relevant and colorable arguments, claims, or defenses.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2010 George and Lois Buscher recorded a statutory warranty deed conveying real property to Margaret Bertran. In part payment Bertran executed a promissory note secured by a deed of trust; the deed of trust was recorded immediately after the statutory warranty deed. Bertran then conveyed the property to Halibut Trust and Toni 1 Trust in equal undivided shares. This conveyance was made expressly

subject to the deed of trust securing payment of Bertran's promissory note to the Buschers. Donald Tangwall holds himself out as a trustee of Halibut Trust and Toni 1 Trust. Barbara Tangwall is Donald Tangwall's wife and Bertran's daughter. At some point the Tangwalls began living at the property.

The deed of trust securing payment of Bertran's promissory note to the Buschers provided for nonjudicial foreclosure in the event of a payment default. The deed of trust named Yukon Title Company as the trustee, Bertran as the trustor, and the Buschers as the beneficiaries. The deed of trust provided that before pursuing nonjudicial foreclosure Yukon Title must provide Bertran notice of an asserted payment default and intent to foreclose.[1] The deed of trust also gave the Buschers the right to submit an offset bid, in the amount of all monies due under the promissory note and deed of trust, at a foreclosure sale.

No payments were made on the promissory note for installments due February through August 2018. The Buschers sent a notice of default to Bertran in August 2018, giving her 30 days to pay the $11,998.04 past due and owing on the note and additional attorney's fees. The notice indicated that failure to cure would result in foreclosure and sale of the property.

The Tangwalls did not dispute the payment default or the cure amount directly, but rather asserted that they believed the total amount due on the promissory note was less than what First National Bank Alaska, the loan servicer, reported. Barbara Tangwall cited and sent the Buschers an amendment form from First National Bank Alaska that purported to forgive interest on past amounts due.[2] However, the document

---

[1]    Foreclosure statutes provide additional notice requirements. AS 09.35.140, 34.20.070.

[2]    When responding to the Buschers, Barbara Tangwall represented that she
(continued...)

itself stated that it was not effective until all parties signed, and there was no indication that either the bank or the Buschers had signed or agreed to the amendment. Donald Tangwall asserted that the amount in dispute on the note was $12,360, but he did not explain this claim. Given the failure of Bertran or the Tangwalls to cure the default, the Buschers authorized Yukon Title Company to conduct a nonjudicial foreclosure.

On the same day the Buschers signed the declaration of default, Yukon Title Company recorded a "Notice of Default and Deed of Trust Foreclosure Sale." The Buschers' attorney sent the notice to Bertran, Halibut Trust, Toni 1 Trust, the property, and Barbara Tangwall at a separate address by certified mail, with return receipt requested, and by regular mail. In addition, the Buschers' attorney took several other measures to provide notice of the foreclosure sale, including posting notice on the property and displaying the notice in three public places. The notice was also published in the print edition of the Alaska Journal of Commerce once a week for four consecutive weeks and on the publication's website from the end of January until mid-March 2019.[3]

At the foreclosure sale in April 2019, the Buschers purchased the property with their offset bid of just over $161,000, reflecting all sums due under the promissory note and deed of trust. Affidavits filed by both parties indicate that Yukon Title Company conducted the sale, though the Tangwalls dispute this in their briefs.

**B.     Proceedings**

Following the foreclosure sale, the Buschers served the Tangwalls, Halibut Trust, and Toni 1 Trust a notice to quit occupancy. The Buschers then pursued an FED action in the district court. After the Buschers unsuccessfully attempted to serve the

---

[2]     (...continued)
held a power of attorney to act on Bertran's behalf.

[3]     *See* AS 09.35.140, 34.20.070.

Tangwalls with the FED summons and complaint in person, the district court allowed alternative service, and the process server posted the documents at the property.

The case was eventually transferred to the superior court, where the court applied a 2018 Presiding Judge's Screening Order arising from a different case to the Tangwalls filings in the FED action. The screening order imposed several conditions upon any filings by the Tangwalls within the Fourth Judicial District, including the requirement that a judge review the filings before they could be accepted. The parties disagreed about whether the screening order required every filing by the Tangwalls to be accompanied by an application seeking leave to file.

The superior court read the screening order to require the Tangwalls to include an application seeking leave to file with every filing in every case, and it thus rejected numerous filings in this matter, including the Tangwall's proposed third-party complaint against Yukon Title Company.[4] Most of the rejected filings suffered deficiencies going beyond their failure to comply with the screening order, and some were later accepted by the court.

Following extensive motion practice, the superior court granted summary judgment in favor of the Buschers on all but one issue. The superior court concluded that there were no genuine disputes of fact regarding payment default on the note, the failure to cure that default, or the total amount due on the promissory note at the time of the foreclosure sale. It further found no genuine dispute whether the notice of foreclosure sale was properly recorded, mailed, and posted, or whether Yukon Title

---

[4] Section 7B of the screening order requires the Tangwalls to apply for leave to file pleadings against particular parties and to include in the application a declaration, under penalty of perjury, that the filing does not raise previously raised or disposed of matters or include claims that are frivolous or made in bad faith, and that the facts have been investigated and support their claims. Absent an application meeting these requirements, the court will reject the filing.

Company lawfully conducted the foreclosure sale. The one factual issue remaining was whether the Alaska Journal of Commerce, which published notice of the foreclosure sale at issue, was "a newspaper of general circulation" under AS 09.35.140(d). The superior court invited additional evidence from the parties regarding this issue.

After considering the supplemental evidence submitted by the parties, the court determined there was no longer a genuine dispute of material fact about whether the Alaska Journal of Commerce constituted a "general circulation" newspaper under AS 09.35.140(d).

The superior court issued a judgment for possession in favor of the Buschers, which required the Tangwalls to vacate the property. The court later granted the Buschers costs and attorney's fees.

The Tangwalls appeal.[5]

## III.   STANDARDS OF REVIEW

"When an appeal 'involves a ruling on summary judgment and presents a question of law,' we 'apply a de novo standard of review, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' "[6] In reviewing orders granting summary judgment, we draw "all reasonable factual inferences in favor of the

---

[5]    Donald and Barbara Tangwall, both self-represented, filed separate appeals that were consolidated.

[6]    *Strong v. Williams*, 435 P.3d 872, 874 (Alaska 2018) (quoting *State Farm Mut. Auto. Ins. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

non-prevailing party"[7] and "will affirm a grant of summary judgment only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law."[8]

We review the issuance of "a pre-litigation screening order . . . for abuse of discretion."[9]  However, the correct interpretation of a pre-litigation screening order is a question of law that we review de novo.[10]  Similarly, "whether the subject of a pre-litigation screening order received adequate procedural due process is a constitutional question that we review de novo."[11]

## IV.  DISCUSSION

The Tangwalls assert several challenges to the superior court's ruling, arguing that:  nonjudicial foreclosure of the property was not permitted; the sale was conducted incorrectly or was otherwise void; the Tangwalls did not receive proper notice of various aspects of the nonjudicial foreclosure sale and subsequent FED action; and the superior court erred and violated their due process rights in applying the litigation screening order to them in this case.  We address each contention below and liberally construe the Tangwalls' arguments as self-represented litigants.[12]

---

[7]     *Perkins v. Doyon Universal Servs., LLC*, 151 P.3d 413, 415-16 (Alaska 2006).

[8]     *DeNardo v. Maassen*, 200 P.3d 305, 311 (Alaska 2009).

[9]     *Id.* at 315.

[10]    *Cf. City of Kenai v. Friends of Rec. Ctr., Inc.*, 129 P.3d 452, 455 & n.8 (Alaska 2006) (noting that when reviewing grant of injunction, questions of pure law are reviewed de novo).

[11]    *DeNardo*, 200 P.3d at 315.

[12]    *See Robinson v. Alaska Hous. Fin. Corp.*, 442 P.3d 763, 768 (Alaska 2019).

**A.	Nonjudicial Foreclosure Was Appropriate In This Case.**

The Tangwalls assert that nonjudicial foreclosure was impermissible in this case because the statutory warranty deed executed by the Buschers does not explicitly refer to nonjudicial foreclosure. The Tangwalls claim that AS 34.20.070 supports their assertion because it requires that "the deed" terms allow for nonjudicial foreclosure. The Tangwalls' argument, however, is premised upon a striking misreading of Alaska law.

Alaska Statute 34.20.070 governs nonjudicial foreclosures. The statute explains that nonjudicial foreclosure is permitted when a "deed of trust . . . executed conveying real property . . . to a trustee as security for the payment of an indebtedness" specifies that "the trustee may sell the property" when the trustor defaults.[13] The provision then refers to a "deed of trust" as "the deed" in the same sentence.[14] The Tangwalls wrongly contend that references to "the deed" refer to the warranty deed.

The deed of trust between Bertran and the Buschers explicitly permits nonjudicial foreclosure and satisfies AS 34.20.070. The deed of trust indicates that in the event of trustor breach, "the power of sale created by this instrument may be invoked by the [b]eneficiary without any prior judicial or other hearing." The second conveyance from Bertran to the two trusts was also expressly subject to the Bertran-Buscher deed of trust.

In advancing arguments regarding the warranty deed, the Tangwalls appear to misunderstand the function of a deed of trust. A deed of trust is interpreted as a

---

[13]	AS 34.20.070(a).

[14]	*Id.* Further evidence that the "deed" in the provision refers to a "deed of trust" is that the chapter in which the regulation is found, AS 34.20, concerns deeds of trusts, not warranty deeds. AS 34.20 (including Chapter 20 "Mortgages and Trust Deeds" with the chapter Article 1 referring to "Mortgages" and Article 2 referring to "Deeds of Trust"). Chapter 15, on the other hand, governs conveyances and the forms of deeds, including warranty deeds. AS 34.15.030.

mortgage,[15] and in Alaska executing a mortgage provides only a lien on, not title to, the property.[16]  In contrast, the conveyance of the statutory warranty deed gives title to, not a lien on, the property.[17]  A foreclosure is on the deed of trust, not the property itself — the sale of the property is used to satisfy the amount due on the deed of trust.[18]

Beyond the Tangwalls' argument related to the warranty deed, they contend that nonjudicial foreclosure was not permitted in this case because they disputed the amount owed on the promissory note.  The Tangwalls have failed, however, to establish facts supporting any genuine dispute about the amount owed to the Buschers.[19]  The Buschers submitted a report from First National Bank Alaska Escrow Department, which serviced and held the deed of trust on the property, showing that as of August 2, 2018, $11,998.04 was due and owing as a result of prior payment defaults.  An assistant vice president and escrow manager with the bank attested to the accuracy and truthfulness of this report.

---

[15]     AS 34.20.110.

[16]     *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831-32 (Alaska 1970).

[17]     *Compare* AS 09.45.680 ("A mortgage of real property is not a conveyance that will enable the owner of the mortgage to recover possession of the real property."), *with* AS 34.15.030 ("A warranty deed for the conveyance of land . . . in the form set forth in . . . this section . . . is considered a conveyance in fee simple to the grantee."). *See also Brand*, 478 P.2d at 831-32.

[18]     AS 34.20.080.

[19]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (explaining that the moving party bears the burden of "proving, through admissible evidence, that there are no [genuine] disputed issues of material fact and that the moving party is entitled to judgment as a matter of law" (alteration in original) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008))).

In the face of this showing on summary judgment, the Tangwalls did not produce any evidence even tending to create a genuine factual dispute about the payment default or the amount needed to cure the default.[20] The Tangwalls asserted that the remaining amount due for full payment of the promissory note was off by approximately $12,000, but neither of the Tangwalls offered evidence explaining or supporting their calculation. Such a claim on its own is too conclusory to create a genuine dispute.[21] Barbara Tangwall provided the only information purporting to support the dispute: a bank form for amendment of an escrow account, signed only by the Tangwalls, waiving interest accrued on past due amounts under the promissory note. But the form explicitly states that "[a]mendments will not be accepted by Bank until these instructions have been signed by all affected parties," and the Tangwalls did not present any evidence that the Buschers signed the form or that the bank accepted it. The form thus constitutes an unaccepted offer and does not dispute the Buschers' evidence regarding the amount owed.[22] The superior court therefore appropriately granted summary judgment in favor of the Buschers on this issue.

The Tangwalls also argue that the Buschers' attorney unlawfully conducted

---

[20] *Id.* at 517 ("Once the moving party has made that showing, the burden shifts to the non-moving party 'to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' " (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978))).

[21] *Id.* at 516 ("[A] non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence—the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence.").

[22] *Alaska Cont'l, Inc. v. Trickey*, 933 P.2d 528, 533-34 (Alaska 1997) (affirming grant of summary judgment in favor of party arguing against existence of agreement where offer was extended, but there was no evidence of acceptance).

the nonjudicial foreclosure sale in place of Yukon Title Company.[23]  But the superior court correctly found that there was no material dispute of fact as to who conducted the sale.  While the trustee's deed states the Buschers' attorney conducted the sale, both parties submitted affidavits of individuals present at the sale that confirm Yukon Title Company actually conducted the sale.  Summary judgment on this point was therefore permissible.

The Tangwalls further contend that nonjudicial foreclosures in Alaska are per se invalid.  However, neither appellant adequately briefed this argument or provided any authority to support the claim.  The argument is therefore waived.[24]

B.      **Notice Of Both The Foreclosure Sale And FED Action Was Proper.**

The Tangwalls also assert that they or the involved trusts were not sufficiently notified of the foreclosure sale or the FED action.  The record, however, establishes otherwise.

Yukon Title Company satisfied its foreclosure-related notice requirements under AS 34.20.070 by recording the notice of default in the recorder's office and mailing the notice by certified mail to the trustor, successors in interests, and other occupants.[25]  The Buschers and Yukon Title further satisfied the additional notice requirements of AS 09.35.140 by posting notice of the foreclosure sale in three public

---

[23]     The Tangwalls assert that this would render the foreclosure sale void.  For a discussion of defects that render a foreclosure void versus voidable, see *Thomas v. Joseph P. Casteel Tr.*, 496 P.3d 403, 406-07 (Alaska 2021).

[24]     *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (explaining that when litigant, even one who is self-represented, fails to make "a substantive argument regarding the merits," the issue is waived).

[25]     AS 34.20.070(b)-(c).  The record does not indicate that there were any recorded junior liens.

places within five miles of the sale place, publishing notice weekly for four successive weeks in "a newspaper of general circulation," and publishing notice online for at least 45 days prior to sale.[26] Although the Buschers' attorney, rather than Yukon Title Company, mailed and posted the notices, we have recognized that it is permissible for a party's attorney to conduct those preliminary steps.[27] Moreover, the record in this case demonstrates no adverse impact to the Tangwalls from the Buschers' involvement in these steps.

Although the Tangwalls question whether the Alaska Journal of Commerce meets AS 09.35.140's requirements for "a newspaper of general circulation," we agree that the Buschers were entitled to summary judgment on this issue. A "newspaper of general circulation" must be distributed at least weekly for 50 weeks annually within the judicial district of the sale; hold a second-class mailing permit; and may not be published primarily to distribute advertising or for a particular professional group.[28]

The Buschers submitted an affidavit from an employee at the Anchorage Daily News (a company that includes the Alaska Journal of Commerce) that attested the newspaper met the requirements of AS 09.35.140(d) and that more than 900 printed newspapers are distributed in "the Fairbanks area." In response, the Tangwalls submitted an affidavit stating that the newspaper, although previously freely available at certain

---

[26]     AS 09.35.140(a)-(d).

[27]     *E.g.*, *Farmer v. Alaska U.S.A. Title Agency, Inc.*, 336 P.3d 160, 161-62 (Alaska 2014) (explaining that beneficiary's attorney recorded and distributed notice of default and sale and affirming superior court's ruling that foreclosure was properly conducted).

[28]     AS 09.35.140(d).

sites in Fairbanks, was no longer available at those locations. Because the Tangwalls'
affidavit did not directly rebut the evidence that the Alaska Journal of Commerce was a
"newspaper of general circulation," summary judgment was appropriate.

The Tangwalls and the trusts also received notice of the Buschers'
subsequent FED action. The record demonstrates that the Buschers provided the
Tangwalls and the involved trusts both with a timely notice to quit the property at issue
and with the FED summons and complaint, and accompanying paperwork, prior to the
FED court proceedings.[29] Moreover, because Donald Tangwall claims to be a trustee of
both Halibut and Toni 1 Trust, and he had notice of the proceedings, there is no question
that the trusts had actual notice of the proceedings,[30] satisfying any due process
concerns.[31]

## C.    Any Error In Applying The Screening Order Was Harmless.

Finally, the Tangwalls object to the superior court's application of the
Presiding Judge's Screening Order[32] in this case, contending both that the court
misinterpreted the screening order and that the court's application of the screening order

---

[29]    AS 09.45.100(c)(2).

[30]    *Cf. Murat v. F/V Shelikof Strait*, 793 P.2d 69, 72-73 (Alaska 1990) (holding
that service on president and another corporate officer constituted sufficient notice to
corporation).

[31]    *See id.* at 72 (requiring "notice reasonably calculated, under all the
circumstances, to apprise [the corporation] of the pendency of the action and afford [it]
an opportunity to present [its] objections" (alterations in original) (quoting *Mullane v.
Centr. Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950))).

[32]    *See* AS 22.10.130 (explaining that presiding judge shall "expedite . . . the
business of the court within the district").

in this action violated their due process rights. Although we believe the superior court misinterpreted the screening order when applying it to this matter, we conclude its error was harmless.

Although several provisions of the screening order plainly apply to all filings within the Fourth Judicial District, other provisions apply only to filings against specific litigants. Section 7A of the order requires a judge to review any document from the Tangwalls before it can be accepted for filing. Section 7B, by contrast, indicates that the Tangwalls must request "[p]ermission to file a complaint, pleading, motion or other document against" specific litigants by attaching an application to the filing. The superior court incorrectly interpreted section 7C, which provides that any "filing . . . which fails to include the preceding information, as required by this Order," to require that every document filed by the Tangwalls in any action be accompanied by an application seeking leave to file. The application provision of the screening order does not apply to this case because the specific litigants referred to in section 7B are not involved in this case.

Due process requires that a screening order may be issued only after the impacted party has received notice and the opportunity to be heard,[33] must be supported by "adequate justification in the record," and must be narrowly tailored.[34] The superior court's mistaken expansion of the terms of the Presiding Judge's Screening Order as

---

[33]     *Dimeff v. Estate of Cowan*, 300 P.3d 1, 10 (Alaska 2013) (explaining that "the Alaska Constitution requires 'notice and opportunity for hearing appropriate to the nature of the case' " (quoting *DeNardo v. Maassen*, 200 P.3d 305, 315 (Alaska 2009))).

[34]     *DeNardo v. Cutler*, 167 P.3d 674, 681 (Alaska 2007) (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1149 (9th Cir. 1990)).

applied to this case arguably failed to uphold one or more of those requirements. However, a party claiming a due process violation must demonstrate some prejudice, and we see none here.[35]

The vast majority of filings screened out due to application of the screening order were also rejected for other proper reasons. One notable exception lies in the superior court's rejection of the Tangwalls' proposed third-party complaint against Yukon Title Company. However, all counts within the third-party complaint were either ultimately rejected in the superior court's summary judgment order or were clearly frivolous or futile. For example, the third-party complaint included allegations related to the amount owed on the note and propriety of notice, both of which the superior court resolved on summary judgment. The complaint also contained several accusations of criminal wrongdoing, which the Tangwalls have no authority to prosecute.[36] Because the superior court's misapplication of the screening order did not result in the rejection of any otherwise proper filings material to valid claims, arguments, or defenses of the Tangwalls, there is no need to disturb the court's final orders and judgment.

To the extent the Tangwalls assert any remaining claims, we deem those claims to be meritless or waived for inadequate briefing.[37]

_____

[35]     *Paula E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 276 P.3d 422, 433 (Alaska 2012) ("Although the due process analysis is a flexible and contextual one focusing on the interest and not the outcome, there must be some actual prejudice. . . and not merely the 'theoretical possibility of prejudice.' " (quoting *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000))).

[36]     *Cf. Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1015 (Alaska 1999) (explaining that criminal statute on its own does not imply private cause of action).

[37]     The Tangwalls make references to other cases that are not relevant to this appeal. It is not clear how these relate to the foreclosure action, and we decline to
(continued...)

## V.    CONCLUSION

We AFFIRM the superior court's orders granting summary judgment in favor of the Buschers and granting a judgment for possession and writ of assistance.

---

[37]    (...continued)
address the issue. *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) (declining to address argument because briefing was "insufficient and difficult to follow").  In their statements of points on appeal the Tangwalls also raised improper entry and the alleged absence of a final judgment, but their failure to brief these issues means they are waived.  *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (describing "our well-established rule that issues not argued in opening appellate briefs are waived").